(Slip Opinion)          OCTOBER TERM, 2010                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BOROUGH OF DURYEA, PENNSYLVANIA, ET AL. *v.* GUARNIERI

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 09–1476.   Argued March 22, 2011—Decided June 20, 2011

After petitioner borough fired respondent Guarnieri as its police chief,
he filed a union grievance that led to his reinstatement.  When the
borough council later issued directives instructing Guarnieri how to
perform his duties, he filed a second grievance, and an arbitrator or-
dered that some of the directives be modified or withdrawn.  Guarni-
eri then filed this suit under 42 U. S. C. §1983, alleging that the di-
rectives were issued in retaliation for the filing of his first grievance,
thereby violating his First Amendment "right . . . to petition the Gov-
ernment for a redress of grievances"; he later amended his complaint
to allege that the council also violated the Petition Clause by denying
his request for overtime pay in retaliation for his having filed the
§1983 suit.  The District Court instructed the jury, *inter alia,* that the
suit and the grievances were constitutionally protected activity, and
the jury found for Guarnieri.  Affirming the compensatory damages
award, the Third Circuit held that a public employee who has peti-
tioned the government through a formal mechanism such as the fil-
ing of a lawsuit or grievance is protected under the Petition Clause
from retaliation for that activity, even if the petition concerns a mat-
ter of solely private concern.  In so ruling, the court rejected the view
of every other Circuit to have considered the issue that, to be pro-
tected, the petition must address a matter of public concern.

*Held:* A government employer's allegedly retaliatory actions against an
   employee do not give rise to liability under the Petition Clause unless
   the employee's petition relates to a matter of public concern.  The
   Third Circuit's conclusion that the public concern test does not limit
   public employees' Petition Clause claims is incorrect.  Pp. 4–19.
   (a) A public employee suing his employer under the First Amend-

ment's Speech Clause must show that he spoke as a citizen on a matter of public concern. *Connick* v. *Myers*, 461 U. S. 138, 147. Even where the employee makes that showing, however, courts balance his employee's right to engage in speech against the government's interest in promoting the efficiency and effectiveness of the public services it performs through its employees. *Pickering* v. *Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U. S. 563, 568. Although cases might arise in which special Petition Clause concerns would require a distinct analysis, public employees' retaliation claims do not call for this divergence. The close connection between the rights of speech and petition has led Courts of Appeals other than the Third Circuit to apply the public concern test to public employees' Petition Clause claims. This approach is justified by the substantial common ground in the definition and delineation of these rights. Pp. 4–8.

   (b) The substantial government interests that justify a cautious and restrained approach to protecting public employees' speech are just as relevant in Petition Clause cases. A petition, no less than speech, can interfere with government's efficient and effective operation by, *e.g.,* seeking results that "contravene governmental policies or impair the proper performance of governmental functions," *Garcetti* v. *Ceballos,* 547 U. S. 410, 419. A petition taking the form of a lawsuit against the government employer may be particularly disruptive, consuming public officials' time and attention, burdening their exercise of legitimate authority, and blurring the lines of accountability between them and the public. Here, for example, Guarnieri's attorney invited the jury to review myriad details of government decisionmaking. It is precisely to avoid this sort of intrusion into internal governmental affairs that this Court has held that, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.,* at 420. Interpreting the Petition Clause to apply even where matters of public concern are not involved would be unnecessary, or even disruptive, when there is already protection for the public employees' rights to file grievances and litigate. Adopting a different rule for Petition Clause claims would provide a ready means for public employees to circumvent the public concern test's protections and aggravate potential harm to the government's interests by compounding the costs of complying with the Constitution. Pp. 8–13.

   (c) Guarnieri's claim that applying the public concern test to the Petition Clause would be inappropriate in light of the private nature of many petitions for redress lacks merit. Although the Clause undoubtedly has force and application in the context of a personal grievance addressed to the government, petitions to the government

Syllabus

assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole. The Clause's history reveals the frequent use of petitions to address a wide range of political, social, and other matters of great public import and interest. Pp. 13–17.

(d) The framework used to govern public employees' Speech Clause claims, when applied to the Petition Clause, will protect both the government's interests and the employee's First Amendment right. If a public employee petitions as an employee on a matter of purely private concern, his First Amendment interest must give way, as it does in speech cases. *San Diego* v. *Roe*, 543 U. S. 77, 82–83. If he petitions as a citizen on a matter of public concern, his First Amendment interest must be balanced against the government's countervailing interest in the effective and efficient management of its internal affairs. *Pickering, supra*, at 568. If that balance favors the public employee, the First Amendment claim will be sustained. If the balance favors the employer, the employee's First Amendment claim will fail even though the petition is on a matter of public concern. As under the Speech Clause, whether a petition relates to a matter of public concern will depend on its "content, form, and context . . . , as revealed by the whole record." *Connick, supra*, at 147–148, n. 7. The forum in which a petition is lodged will also be relevant. See *Snyder* v. *Phelps*, 562 U. S. ___, ___. A petition filed with a government employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context. Pp. 17–18.

(e) Absent full briefs by the parties, the Court need not consider how the foregoing framework would apply to this case. P. 19.

364 Fed. Appx. 749, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment. SCALIA, J., filed an opinion concurring in the judgment in part and dissenting in part.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–1476

_____

## BOROUGH OF DURYEA, PENNSYLVANIA, ET AL., PETITIONERS *v.* CHARLES J. GUARNIERI

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[June 20, 2011]

JUSTICE KENNEDY delivered the opinion of the court.

Among other rights essential to freedom, the First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U. S. Const., Amdt. 1. This case concerns the extent of the protection, if any, that the Petition Clause grants public employees in routine disputes with government employers. Petitions are a form of expression, and employees who invoke the Petition Clause in most cases could invoke as well the Speech Clause of the First Amendment. To show that an employer interfered with rights under the Speech Clause, the employee, as a general rule, must show that his speech was on a matter of public concern, as that term is defined in the precedents of this and other courts. Here the issue is whether that test applies when the employee invokes the Petition Clause.

Alone among the Courts of Appeals to have addressed the issue, the Court of Appeals for the Third Circuit has held that the public concern test does not limit Petition Clause claims by public employees. For the reasons stated below, this conclusion is incorrect.

## I

Charles Guarnieri filed a union grievance challenging his termination as chief of police for the borough of Duryea, a town of about 4,600 persons in northeastern Pennsylvania. His grievance proceeded to arbitration pursuant to the police union collective-bargaining agreement. The arbitrator found that the borough council, Duryea's legislative body and the entity responsible for Guarnieri's termination, committed procedural errors in connection with the termination; and the arbitrator also found that Guarnieri engaged in misconduct, including "attempting to intimidate Council members." App. 37, 38. The arbitrator ordered Guarnieri reinstated after a disciplinary suspension. *Id.*, at 38.

Upon Guarnieri's return to the job, the council issued 11 directives instructing Guarnieri in the performance of his duties. The council's attorney explained that the council "wanted to be sure that the chief understood what was going to be expected of him upon his return." Tr. 19:12–14 (Apr. 16, 2008). One directive prohibited Guarnieri from working overtime without the council's "express permission." App. 59, ¶1. Another indicated that "[t]he police car is to be used for official business only." *Id.*, at 60, ¶9. A third stated that the "Duryea municipal building is a smoke free building" and that the "police department is not exempt." *Id.*, at 61, ¶10. Guarnieri testified that, because of these and other directives, his "coming back wasn't a warm welcome feeling." Tr. 65:7–8 (Apr. 15, 2008). Guarnieri filed a second union grievance challenging the directives. The arbitrator instructed the council to modify or withdraw some of the directives on the grounds that they were vague, interfered with the authority of the mayor, or were contrary to the collective-bargaining agreement.

Guarnieri filed this lawsuit against the borough, the borough council, and individual members of the council

under 42 U. S. C. §1983. Guarnieri claimed that his first union grievance was a petition protected by the Petition Clause of the First Amendment, and he alleged that the directives issued upon his reinstatement were retaliation for that protected activity.

After this suit was filed, the council denied a request by Guarnieri for $338 in overtime. The United States Department of Labor investigated and concluded that Guarnieri was entitled to be paid. The council offered Guarnieri a check for the amount, but Guarnieri refused to accept it. Instead, Guarnieri amended his complaint to encompass the denial of overtime. Guarnieri alleged that his §1983 lawsuit was a petition and that the denial of overtime constituted retaliation for his having filed the lawsuit.

Under the law of the Circuit, the defendants could not obtain judgment as a matter of law on the basis that the lawsuit and grievances were not on a matter of public concern. The case proceeded to a jury. Guarnieri's attorney argued that the council was "sending a message to" Guarnieri through the directives and the denial of overtime: "You might have won your arbitration, but we control you." Tr. 53:24–25 (Apr. 17, 2008). The District Court instructed the jury that the lawsuit and union grievances were "protected activity . . . under the constitution," and that the jury could find defendants liable if it found an adequate connection between the protected activity and the alleged retaliation. *Id.*, at 61:17–20; 62. The jury found in favor of Guarnieri. The jury awarded $45,000 in compensatory damages and $24,000 in punitive damages for the directives, as well as $358 in compensatory damages and $28,000 in punitive damages for the denial of overtime. The District Court awarded $45,000 in attorney's fees and denied defendants' renewed motion for judgment as a matter of law.

Defendants appealed on the ground that Guarnieri's

grievances and lawsuit did not address matters of public concern. Courts outside the Third Circuit have held that allegedly retaliatory actions by government employers against government employees may not give rise to liability under the Petition Clause unless the employee's petition related to a matter of public concern. See, *e.g., Kirby* v. *Elizabeth City*, 388 F. 3d 440, 448–449 (CA4 2004); *Tang* v. *Rhode Island, Dept. of Elderly Affairs*, 163 F. 3d 7, 11–12 (CA1 1998); *White Plains Towing Corp.* v. *Patterson*, 991 F. 2d 1049, 1059 (CA2 1993). These courts rely on a substantial overlap between the rights of speech and petition to justify the application of Speech Clause precedents to Petition Clause claims. They reason that, whether the grievance is considered under the Speech Clause or the Petition Clause, the government employer is entitled to take adverse action against the employee unless the dispute involves a matter of public concern.

Rejecting that view, the Court of Appeals here affirmed the award of compensatory damages, although it found insufficient evidence to sustain the award of punitive damages. The Court of Appeals concluded that "'a public employee who has petitioned the government through a formal mechanism such as the filing of a lawsuit or grievance is protected under the Petition Clause from retaliation for that activity, even if the petition concerns a matter of solely private concern.'" 364 Fed. Appx. 749, 753 (CA3 2010) (quoting *Foraker* v. *Chaffinch*, 501 F. 3d 231, 236 (CA3 2007)). The decision of the Court of Appeals was consistent with the rule adopted and explained by that court in *San Filippo* v. *Bongiovanni*, 30 F. 3d 424, 442 (1994). This Court granted certiorari to resolve the conflict in the Courts of Appeals. 562 U. S. ___ (2010).

## II

When a public employee sues a government employer under the First Amendment's Speech Clause, the em-

ployee must show that he or she spoke as a citizen on a matter of public concern. *Connick* v. *Myers*, 461 U. S. 138, 147 (1983). If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Ibid.* Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering* v. *Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U. S. 563, 568 (1968).

This framework "reconcile[s] the employee's right to engage in speech and the government employer's right to protect its own legitimate interests in performing its mission." *San Diego* v. *Roe*, 543 U. S. 77, 82 (2004) *(per curiam)*. There are some rights and freedoms so fundamental to liberty that they cannot be bargained away in a contract for public employment. "Our responsibility is to ensure that citizens are not deprived of [these] fundamental rights by virtue of working for the government." *Connick, supra*, at 147; see also *Keyishian* v. *Board of Regents of Univ. of State of N. Y.*, 385 U. S. 589, 605–606 (1967). Nevertheless, a citizen who accepts public employment "must accept certain limitations on his or her freedom." *Garcetti* v. *Ceballos*, 547 U. S. 410, 418 (2006). The government has a substantial interest in ensuring that all of its operations are efficient and effective. That interest may require broad authority to supervise the conduct of public employees. "When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have

some power to restrain her." *Waters* v. *Churchill*, 511 U. S. 661, 675 (1994) (plurality opinion). Restraints are justified by the consensual nature of the employment relationship and by the unique nature of the government's interest.

This case arises under the Petition Clause, not the Speech Clause. The parties litigated the case on the premise that Guarnieri's grievances and lawsuit are petitions protected by the Petition Clause. This Court's precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure-Tan, Inc.* v. *NLRB*, 467 U. S. 883, 896–897 (1984); see also *BE&K Constr. Co.* v. *NLRB*, 536 U. S. 516, 525 (2002); *Bill Johnson's Restaurants, Inc.* v. *NLRB*, 461 U. S. 731, 741 (1983); *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U. S. 508, 513 (1972). Although retaliation by a government employer for a public employee's exercise of the right of access to the courts may implicate the protections of the Petition Clause, this case provides no necessity to consider the correct application of the Petition Clause beyond that context.

Although this case proceeds under the Petition Clause, Guarnieri just as easily could have alleged that his employer retaliated against him for the speech contained within his grievances and lawsuit. That claim would have been subject to the public concern test already described. Because Guarnieri chose to proceed under the Petition Clause, however, the Court of Appeals applied a more generous rule. Following the decision of the Court of Appeals in *San Filippo, supra*, at 443, Guarnieri was deemed entitled to protection from retaliation so long as his petition was not a "sham." Under that rule, defendants and other public employers might be liable under

the Petition Clause even if the same conduct would not give rise to liability under the Speech Clause. The question presented by this case is whether the history and purpose of the Petition Clause justify the imposition of broader liability when an employee invokes its protection instead of the protection afforded by the Speech Clause.

It is not necessary to say that the two Clauses are identical in their mandate or their purpose and effect to acknowledge that the rights of speech and petition share substantial common ground. This Court has said that the right to speak and the right to petition are "cognate rights." *Thomas* v. *Collins*, 323 U. S. 516, 530 (1945); see also *Wayte* v. *United States*, 470 U. S. 598, 610, n. 11 (1985). "It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances." *Thomas*, 323 U. S., at 530. Both speech and petition are integral to the democratic process, although not necessarily in the same way. The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs. Beyond the political sphere, both speech and petition advance personal expression, although the right to petition is generally concerned with expression directed to the government seeking redress of a grievance.

Courts should not presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims. See *ibid.* (rights of speech and petition are "not identical"). Interpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right. A petition conveys the special concerns

of its author to the government and, in its usual form, requests action by the government to address those concerns. See *Sure-Tan Inc., supra*, at 896–897.

This Court's opinion in *McDonald* v. *Smith*, 472 U. S. 479 (1985), has sometimes been interpreted to mean that the right to petition can extend no further than the right to speak; but *McDonald* held only that speech contained within a petition is subject to the same standards for defamation and libel as speech outside a petition. In those circumstances the Court found "no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions." *Id.*, at 485. There may arise cases where the special concerns of the Petition Clause would provide a sound basis for a distinct analysis; and if that is so, the rules and principles that define the two rights might differ in emphasis and formulation.

As other Courts of Appeals have recognized, however, claims of retaliation by public employees do not call for this divergence. See *supra*, at 4. The close connection between these rights has led Courts of Appeals other than the Third Circuit to apply the public concern test developed in Speech Clause cases to Petition Clause claims by public employees. As will be explained further, this approach is justified by the extensive common ground in the definition and delineation of these rights. The considerations that shape the application of the Speech Clause to public employees apply with equal force to claims by those employees under the Petition Clause.

The substantial government interests that justify a cautious and restrained approach to the protection of speech by public employees are just as relevant when public employees proceed under the Petition Clause. Petitions, no less than speech, can interfere with the efficient and effective operation of government. A petition may seek to achieve results that "contravene governmen-

tal policies or impair the proper performance of governmental functions." *Garcetti*, 547 U. S., at 419. Government must have authority, in appropriate circumstances, to restrain employees who use petitions to frustrate progress towards the ends they have been hired to achieve. A petition, like other forms of speech, can bring the "mission of the employer and the professionalism of its officers into serious disrepute." *Roe*, 543 U. S., at 81. A public employee might, for instance, use the courts to pursue personal vendettas or to harass members of the general public. That behavior could cause a serious breakdown in public confidence in the government and its employees. And if speech or petition were directed at or concerned other public employees, it could have a serious and detrimental effect on morale.

When a petition takes the form of a lawsuit against the government employer, it may be particularly disruptive. Unlike speech of other sorts, a lawsuit demands a response. Mounting a defense to even frivolous claims may consume the time and resources of the government employer. Outside the context of public employment, this Court has recognized that the Petition Clause does not protect "objectively baseless" litigation that seeks to "'interfere *directly* with the business relationships of a competitor.'" *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, 508 U. S. 49, 60–61 (1993) (quoting *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U. S. 127, 144 (1961)). In recognition of the substantial costs imposed by litigation, Congress has also required civil rights plaintiffs whose suits are "frivolous, unreasonable, or without foundation" to pay attorney's fees incurred by defendants. *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 421 (1978); see also Fed. Rule Civ. Proc. 11 (providing sanctions for claims that are "presented for [an] improper purpose," frivolous, or lacking evidentiary support). The government likewise

has a significant interest in disciplining public employees who abuse the judicial process.

Unrestrained application of the Petition Clause in the context of government employment would subject a wide range of government operations to invasive judicial superintendence. Employees may file grievances on a variety of employment matters, including working conditions, pay, discipline, promotions, leave, vacations, and terminations. See Brief for National School Boards Association as *Amicus Curiae* 5. Every government action in response could present a potential federal constitutional issue. Judges and juries, asked to determine whether the government's actions were in fact retaliatory, would be required to give scrutiny to both the government's response to the grievance and the government's justification for its actions. This would occasion review of a host of collateral matters typically left to the discretion of public officials. Budget priorities, personnel decisions, and substantive policies might all be laid before the jury. This would raise serious federalism and separation-of-powers concerns. It would also consume the time and attention of public officials, burden the exercise of legitimate authority, and blur the lines of accountability between officials and the public.

This case illustrates these risks and costs. Guarnieri's attorney invited the jury to review myriad details of government decisionmaking. She questioned the council's decision to issue directives in writing, rather than orally, Tr. 66 (Apr. 14, 2008); the council's failure to consult the mayor before issuing the directives, *id.*, at 105 (Apr. 15, 2008); the amount of money spent to employ "Philadelphia lawyers" to defend Guarnieri's legal challenges, *id.*, at 191–193:7–10 (Apr. 14, 2008); 152–153 (Apr. 16, 2008); and the wisdom of the council's decision to spend money to install Global Positioning System devices on police cars, *id.*, at 161–162 (same). Finally, the attorney invited the jury to evaluate the council's decisions in light of an emo-

tional appeal on behalf of Guarnieri's "little dog Hercules, little white fluffy dog and half Shitsu." *Id.*, at 49:13–14 (Apr. 14, 2008). It is precisely to avoid this intrusion into internal governmental affairs that this Court has held that, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti, supra*, at 420 (quoting *Connick*, 461 U. S., at 154).

If the Petition Clause were to apply even where matters of public concern are not involved, that would be unnecessary, or even disruptive, when there is already protection for the rights of public employees to file grievances and to litigate. The government can and often does adopt statutory and regulatory mechanisms to protect the rights of employees against improper retaliation or discipline, while preserving important government interests. Cf. *Garcetti, supra*, at 425 (noting a "powerful network of legislative enactments"). Employees who sue under federal and state employment laws often benefit from generous and quite detailed antiretaliation provisions. See, *e.g.,* Pa. Stat. Ann., Tit. 43, §1101.1201(a)(4) (Purdon 2009); §1101.1302. These statutory protections are subject to legislative revision and can be designed for the unique needs of State, local, or Federal Governments, as well as the special circumstances of particular governmental offices and agencies. The Petition Clause is not an instrument for public employees to circumvent these legislative enactments when pursuing claims based on ordinary workplace grievances.

In light of the government's interests in the public employment context, it would be surprising if Petition Clause claims by public employees were not limited as necessary to protect the employer's functions and responsibilities. Even beyond the Speech Clause, this Court has explained that "government has significantly greater leeway in its dealings with citizen employees than it does

when it brings its sovereign power to bear on citizens at large." *Engquist* v. *Oregon Dept. of Agriculture*, 553 U. S. 591, 599 (2008); see also *NASA* v. *Nelson*, 562 U. S. ___, ___ (2011) (slip op., at 12). The government's interest in managing its internal affairs requires proper restraints on the invocation of rights by employees when the workplace or the government employer's responsibilities may be affected. There is no reason to think the Petition Clause should be an exception.

The public concern test was developed to protect these substantial government interests. Adoption of a different rule for Petition Clause claims would provide a ready means for public employees to circumvent the test's protections. Consider Sheila Myers, who was the original plaintiff in *Connick*. She circulated "a questionnaire soliciting the views of her fellow staff members" on various office matters. 461 U. S., at 141. The Court held that Myers' claim for retaliation failed the public concern test because the questionnaire was "most accurately characterized as an employee grievance concerning internal office policy." *Id.*, at 154. It would undermine that principle if a different result would have obtained had Myers raised those same claims using a formal grievance procedure. Myers' employer "reasonably believed [Myers' complaints] would disrupt the office, undermine his authority, and destroy close working relationships." *Ibid.* These concerns would be no less significant in the context of a formal grievance. Employees should not be able to evade the rule articulated in the *Connick* case by wrapping their speech in the mantle of the Petition Clause.

Articulation of a separate test for the Petition Clause would aggravate potential harm to the government's interests by compounding the costs of compliance with the Constitution. A different rule for each First Amendment claim would require employers to separate petitions from other speech in order to afford them different treatment;

and that, in turn, would add to the complexity and expense of compliance with the Constitution. Identifying petitions might be easy when employees employ formal grievance procedures, but the right to petition is not limited to petitions lodged under formal procedures. See, *e.g., Brown* v. *Louisiana*, 383 U. S. 131 (1966). Indeed, the employee in *Connick* could have made a colorable argument that her questionnaire ought to be viewed as a petition for redress of grievances.

Guarnieri claims application of the public concern test to the Petition Clause would be inappropriate in light of the private nature of many petitions for redress of grievances. The Petition Clause undoubtedly does have force and application in the context of a personal grievance addressed to the government. See, *e.g., Trainmen* v. *Virginia ex rel. Virginia State Bar*, 377 U. S. 1 (1964); *Thomas*, 323 U. S., at 530–531. At the founding, citizens petitioned on a wide range of subjects, including matters of both private and public concern. Petitions to the colonial legislatures concerned topics as diverse as debt actions, estate distributions, divorce proceedings, and requests for modification of a criminal sentence. Higginson, A Short History of the Right to Petition Government for the Redress of Grievances, 96 Yale L. J. 142, 146 (1986). Although some claims will be of interest only to the individual making the appeal, for that individual the need for a legal remedy may be a vital imperative. See, *e.g.*, *M. L. B.* v. *S. L. J.*, 519 U. S. 102 (1996); *Boddie* v. *Connecticut*, 401 U. S. 371 (1971). Outside the public employment context, constitutional protection for petitions does not necessarily turn on whether those petitions relate to a matter of public concern.

There is, however, no merit to the suggestion that the public concern test cannot apply under the Petition Clause because the majority of petitions to colonial legislatures addressed matters of purely private concern. In analogous

cases under the Speech Clause, this Court has noted the "Constitution's special concern with threats to the right of citizens to participate in political affairs," *Connick, supra*, at 145, even though it is likely that, in this and any other age, most speech concerns purely private matters. The proper scope and application of the Petition Clause likewise cannot be determined merely by tallying up petitions to the colonial legislatures. Some effort must be made to identify the historic and fundamental principles that led to the enumeration of the right to petition in the First Amendment, among other rights fundamental to liberty.

Petitions to the government assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole. Petition, as a word, a concept, and an essential safeguard of freedom, is of ancient significance in the English law and the Anglo-American legal tradition. See, *e.g.,* 1 W. Blackstone, Commentaries *143. The right to petition applied to petitions from nobles to the King, from Parliament to the King, and from the people to the Parliament, and it concerned both discrete, personal injuries and great matters of state.

The right to petition traces its origins to Magna Carta, which confirmed the right of barons to petition the King. W. McKechnie, Magna Carta: A Commentary on the Great Charter of King John 467 (rev. 2d ed. 1958). The Magna Carta itself was King John's answer to a petition from the barons. *Id.*, at 30–38. Later, the Petition of Right of 1628 drew upon centuries of tradition and Magna Carta as a model for the Parliament to issue a plea, or even a demand, that the Crown refrain from certain actions. 3 Car. 1, ch. 1 (1627). The Petition of Right stated four principal grievances: taxation without consent of Parliament; arbitrary imprisonment; quartering or billeting of soldiers; and the imposition of martial law. After its passage by both Houses of Parliament, the Petition received the

King's assent and became part of the law of England. See
S. Gardiner, The First Two Stuarts and the Puritan Revo-
lution, 1603–1660, pp. 60–61 (1886). The Petition of Right
occupies a place in English constitutional history super-
seded in importance, perhaps, only by Magna Carta itself
and the Declaration of Right of 1689.

The following years saw use of mass petitions to address
matters of public concern. See 8 D. Hume, History of
England from the Invasion of Julius Caesar to the Revolu-
tion in 1688, p. 122 (1763) ("Tumultuous petitioning . . .
was an admirable expedient . . . for spreading discontent,
and for uniting the nation in any popular clamour"). In
1680, for instance, more than 15,000 persons signed a
petition regarding the summoning and dissolution of Par-
liament, "one of the major political issues agitating the
nation." Knights, London's 'Monster' Petition, 36 Histori-
cal Journal 39, 40–43 (1993). Nine years later, the Decla-
ration of Right listed the illegal acts of the sovereign and
set forth certain rights of the King's subjects, one of which
was the right to petition the sovereign. It stated that "it
is the Right of the Subjects to petition the King, and all
Commitments and Prosecutions for such Petitioning are
Illegal." 1 W. & M., ch. 2; see also L. Schwoerer, The
Declaration of Rights, 1689, pp. 69–71 (1981).

The Declaration of Independence of 1776 arose in the
same tradition. After listing other specific grievances and
wrongs, it complained, "In every stage of these Oppres-
sions We have Petitioned for Redress in the most humble
terms: Our repeated Petitions have been answered only by
repeated injury." The Declaration of Independence ¶30.

After independence, petitions on matters of public con-
cern continued to be an essential part of contemporary
debates in this country's early history. Two years before
the adoption of the Constitution, James Madison's Memo-
rial and Remonstrance against Religious Assessments, an
important document in the history of the Establishment

Clause, was presented to the General Assembly of the Commonwealth of Virginia as a petition. See 1 D. Laycock, Religious Liberty: Overviews and History 90 (2010); *Arizona Christian School Tuition Organization* v. *Winn*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 12–13). It attracted over 1,000 signatures. Laycock, *supra*, at 90, n. 153. During the ratification debates, Antifederalists circulated petitions urging delegates not to adopt the Constitution absent modification by a bill of rights. Boyd, Antifederalists and the Acceptance of the Constitution: Pennsylvania, 1787–1792, 9 Publius, No. 2, pp. 123, 128– 133 (Spring 1979).

Petitions to the National Legislature also played a central part in the legislative debate on the subject of slavery in the years before the Civil War. See W. Miller, Arguing About Slavery (1995). Petitions allowed participation in democratic governance even by groups excluded from the franchise. See Mark, The Vestigial Constitution: The History and Significance of the Right to Petition, 66 Ford. L. Rev. 2153, 2182 (1998). For instance, petitions by women seeking the vote had a role in the early woman's suffrage movement. See Cogan & Ginzberg, 1846 Petition for Woman's Suffrage, New York State Constitutional Convention, 22 Signs 427, 437–438 (1997). The right to petition is in some sense the source of other fundamental rights, for petitions have provided a vital means for citizens to request recognition of new rights and to assert existing rights against the sovereign.

Petitions to the courts and similar bodies can likewise address matters of great public import. In the context of the civil rights movement, litigation provided a means for "the distinctive contribution of a minority group to the ideas and beliefs of our society." *NAACP* v. *Button*, 371 U. S. 415, 431 (1963). Individuals may also "engag[e] in litigation as a vehicle for effective political expression and association, as well as a means of communicating useful

information to the public." *In re Primus*, 436 U. S. 412, 431 (1978). Litigation on matters of public concern may facilitate the informed public participation that is a cornerstone of democratic society. It also allows individuals to pursue desired ends by direct appeal to government officials charged with applying the law.

The government may not misuse its role as employer unduly to distort this deliberative process. See *Garcetti*, 547 U. S., at 419. Public employees are "the members of a community most likely to have informed and definite opinions" about a wide range of matters related, directly or indirectly, to their employment. *Pickering*, 391 U. S., at 572. Just as the public has a right to hear the views of public employees, the public has a right to the benefit of those employees' participation in petitioning activity. Petitions may "allow the public airing of disputed facts" and "promote the evolution of the law by supporting the development of legal theories," *NLRB*, 536 U. S., at 532 (internal quotation marks omitted), and these and other benefits may not accrue if one class of knowledgeable and motivated citizens is prevented from engaging in petitioning activity. When a public employee seeks to participate, as a citizen, in the process of deliberative democracy, either through speech or petition, "it is necessary to regard the [employee] as the member of the general public he seeks to be." *Pickering, supra*, at 574.

The framework used to govern Speech Clause claims by public employees, when applied to the Petition Clause, will protect both the interests of the government and the First Amendment right. If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases. *Roe*, 543 U. S., at 82–83. When a public employee petitions as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the

government in the effective and efficient management of its internal affairs. *Pickering, supra*, at 568. If that balance favors the public employee, the employee's First Amendment claim will be sustained. If the interference with the government's operations is such that the balance favors the employer, the employee's First Amendment claim will fail even though the petition is on a matter of public concern.

As under the Speech Clause, whether an employee's petition relates to a matter of public concern will depend on "the content, form, and context of [the petition], as revealed by the whole record." *Connick*, 461 U. S., at 147–148, and n. 7. The forum in which a petition is lodged will be relevant to the determination of whether the petition relates to a matter of public concern. See *Snyder* v. *Phelps*, 562 U. S. ___, ___ (2011) (slip op., at 8–9). A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context.

Of course in one sense the public may always be interested in how government officers are performing their duties. But as the *Connick* and *Pickering* test has evolved, that will not always suffice to show a matter of public concern. A petition that "involves nothing more than a complaint about a change in the employee's own duties" does not relate to a matter of public concern and accordingly "may give rise to discipline without imposing any special burden of justification on the government employer." *United States* v. *Treasury Employees*, 513 U. S. 454, 466 (1995). The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.

### III

Because the Third Circuit did not find it necessary to apply this framework, there has been no determination as to how it would apply in the context of this case. The parties did not address the issue in the opening brief or the response, and the United States did not address the issue in its brief as *amicus curiae*. In their reply brief, petitioners suggest that this Court should address the issue and resolve it in their favor. Yet in their opening brief petitioners sought only vacatur and remand. This Court need not consider this issue without the benefit of full briefs by the parties.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 09–1476

BOROUGH OF DURYEA, PENNSYLVANIA, ET AL.,
PETITIONERS *v.* CHARLES J. GUARNIERI

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[June 20, 2011]

JUSTICE THOMAS, concurring in the judgment.

For the reasons set forth by JUSTICE SCALIA, I seriously doubt that lawsuits are "petitions" within the original meaning of the Petition Clause of the First Amendment. See *post*, at 2–3 (opinion concurring in judgment in part and dissenting in part). Unreasoned statements to the contrary in this Court's prior decisions do not convince me otherwise. Like the Court, however, I need not decide that question today because "[t]he parties litigated the case on the premise that Guarnieri's grievances and lawsuit are petitions protected by the Petition Clause." *Ante*, at 6.

I also largely agree with JUSTICE SCALIA about the framework for assessing public employees' retaliation claims under the Petition Clause. The "public concern" doctrine of *Connick* v. *Myers*, 461 U. S. 138 (1983), is rooted in the First Amendment's core protection of speech on matters of public concern and has no relation to the right to petition. See *post*, at 3–7. I would not import that test into the Petition Clause. Rather, like JUSTICE SCALIA, I would hold that "the Petition Clause protects public employees against retaliation for filing petitions unless those petitions are addressed to the government in its capacity as the petitioners' employer, rather than its capacity as their sovereign." *Post*, at 7.

But I would not end the analysis after determining that

a petition was addressed to the government as sovereign. Recognizing "the realities of the employment context," we have held that "government has significantly greater lee-way in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Engquist* v. *Oregon Dept. of Agriculture*, 553 U. S. 591, 600, 599 (2008). Even where a public employee peti-tions the government in its capacity as sovereign, I would balance the employee's right to petition the sovereign against the government's interest as an employer in the ef-fective and efficient management of its internal affairs. Cf. *Garcetti* v. *Ceballos*, 547 U. S. 410, 419 (2006) (noting that employees "speaking as citizens about matters of pub-lic concern" still must "face . . . speech restrictions that are necessary for their employers to operate efficiently and effectively"); *United States* v. *Treasury Employees*, 513 U. S. 454, 492 (1995) (Rehnquist, C. J., dissenting) ("In conducting this balance [in the Speech Clause context], we consistently have given substantial weight to govern-ment employers' reasonable predictions of disruption, even when the speech involved was on a matter of public con-cern"); *O'Connor* v. *Ortega*, 480 U. S. 709, 721–722 (1987) (plurality opinion) (balancing the "the realities of the workplace" against the "legitimate privacy interests of public employees" to conclude that a warrant requirement would "seriously disrupt the routine conduct of business" and "be unduly burdensome"). In assessing a retaliation claim under the Petition Clause, courts should be able to conclude that, in instances when the petition is especially disruptive, as some lawsuits might be, the balance of interests may weigh in favor of the government employer.

Applying this framework, I would vacate the judgment and remand. The Court of Appeals erred with respect to both Guarnieri's union grievance and his 42 U. S. C. §1983 suit. First, even assuming the grievance was a petition, it was addressed to the local government in its capacity as

Guarnieri's employer. See *post*, at 8 (opinion of SCALIA, J.). Second, Guarnieri addressed his §1983 suit to the Federal Government in its capacity as sovereign, not to the local government as his employer. See *ibid.* But the Court of Appeals did not consider whether the local government's interest as an employer "in achieving its goals as effectively and efficiently as possible" nevertheless outweighs Guarnieri's interest in petitioning the Federal Government regarding his local employment. *Engquist*, *supra*, at 598 (internal quotation marks omitted). I would vacate and remand for the Court of Appeals to conduct that analysis in the first instance.

# SUPREME COURT OF THE UNITED STATES

No. 09–1476

BOROUGH OF DURYEA, PENNSYLVANIA, ET AL.,
PETITIONERS *v.* CHARLES J. GUARNIERI

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[June 20, 2011]

JUSTICE SCALIA, concurring in the judgment in part and
dissenting in part.

I disagree with two aspects of the Court's reasoning.
First, the Court is incorrect to state that our "precedents
confirm that the Petition Clause protects the right of
individuals to appeal to courts and other forums estab-
lished by the government for resolution of legal disputes."
*Ante*, at 6. Our first opinion clearly saying that lawsuits
are "Petitions" under the Petition Clause came less than
40 years ago. In *California Motor Transport Co.* v. *Truck-
ing Unlimited*, 404 U. S. 508 (1972),[1] an opinion by Justice
Douglas, the Court asserted that "[t]he right of access to
the courts is indeed but one aspect of the right of petition."
*Id.,* at 510. As authority it cited two habeas corpus cases,
*Johnson* v. *Avery*, 393 U. S. 483 (1969), and *Ex parte Hull*,
312 U. S. 546 (1941), neither of which even mentioned the
Petition Clause. The assertion, moreover, was pure dic-
tum. The holding of *California Motor Transport* was that
the *Noerr-Pennington* doctrine, a judicial gloss on the

_____

[1] Respondent would agree, since he cited this case in argument as the
earliest. Tr. of Oral Arg. 36. There were, however, three cases in the
1960's which adverted vaguely to lawsuits as involving the right to
petition. See *Mine Workers* v. *Illinois Bar Assn.*, 389 U. S. 217, 222–
224 (1967); *Trainmen* v. *Virginia ex rel. Virginia State Bar*, 377 U. S. 1,
7 (1964); *NAACP* v. *Button*, 371 U. S. 415, 430 (1963).

Sherman Act that had been held to immunize certain lobbying (legislature-petitioning) activity, did *not* apply to sham litigation that "sought to bar . . . competitors from meaningful access to adjudicatory tribunals," 404 U. S., at 510–512. The three other cases cited by the Court as holding that lawsuits are petitions, *ante*, at 6, are all statutory interpretation decisions construing the National Labor Relations Act, albeit against the backdrop of the Petition Clause. See *BE&K Constr. Co.* v. *NLRB*, 536 U. S. 516, 534–536 (2002); *Sure-Tan, Inc.* v. *NLRB*, 467 U. S. 883, 896–897 (1984) *Bill Johnson's Restaurants, Inc.* v. *NLRB*, 461 U. S. 731, 741–743 (1983). The Court has never actually *held* that a lawsuit is a constitutionally protected "Petition," nor does today's opinion hold that. The Court merely observes that "[t]he parties litigated the case on the premise that Guarnieri's grievances and lawsuit are petitions protected by the Petition Clause," *ante*, at 6, and concludes that Guarnieri's 42 U. S. C. §1983 claim would fail even if that premise were correct.

I find the proposition that a lawsuit is a constitutionally protected "Petition" quite doubtful. The First Amendment's Petition Clause states that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." The reference to "the right of the people" indicates that the Petition Clause was intended to codify a pre-existing individual right, which means that we must look to historical practice to determine its scope. See *District of Columbia* v. *Heller*, 554 U. S. 570, 579, 592 (2008).

There is abundant historical evidence that "Petitions" were directed to the executive and legislative branches of government, not to the courts. In 1765, the Stamp Act Congress stated "[t]hat it is the right of the British subjects in these colonies to petition the King or either House of Parliament." Declaration of Rights and Grievances, Art. 13, reprinted in 1 B. Schwartz, The Bill of Rights: A

Documentary History 195, 198 (1971); it made no mention of petitions directed to the courts. As of 1781, seven state constitutions protected citizens' right to apply or petition for redress of grievances; all seven referred only to legislative petitions. See Andrews, A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right, 60 Ohio St. L. J. 557, 604–605, n. 159 (1999). The Judiciary Act of 1789 did not grant federal trial courts jurisdiction to hear lawsuits arising under federal law; there is no indication anyone ever thought that this restriction infringed on the right of citizens to petition the Federal Government for redress of grievances. The fact that the Court never affirmed a First Amendment right to litigate until its unsupported dictum in 1972—after having heard almost 200 years' worth of lawsuits, untold numbers of which might have been affected by a First Amendment right to litigate—should give rise to a strong suspicion that no such right exists. "[A] universal and long-established tradition of prohibiting certain conduct creates a strong presumption that the prohibition is constitutional: Principles of liberty fundamental enough to have been embodied within constitutional guarantees are not readily erased from the Nation's consciousness." *Nevada Comm'n on Ethics* v. *Carrigan*, *ante*, at 4 (internal quotation marks omitted).

I acknowledge, however, that scholars have made detailed historical arguments to the contrary. See, *e.g.*, Andrews, *supra*, at 595–625; Pfander, Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government, 91 Nw. U. L. Rev. 899, 903–962 (1997). As the Court's opinion observes, the parties have not litigated the issue, and so I agree we should leave its resolution to another day.

Second, and of greater practical consequence, I disagree with the Court's decision to apply the "public concern"

framework of *Connick* v. *Myers*, 461 U. S. 138 (1983), to retaliation claims brought under the Petition Clause. The Court correctly holds that the Speech Clause and Petition Clause are not co-extensive, *ante*, at 7–8. It acknowledges, moreover, that the Petition Clause protects personal grievances addressed to the government, *ante*, at 13. But that is an understatement—rather like acknowledging that the Speech Clause protects verbal expression. "[T]he primary responsibility of colonial assemblies was the settlement of private disputes raised by petitions." Higginson, A Short History of the Right to Petition Government for the Redress of Grievances, 96 Yale L. J. 142, 145 (1986). "[T]he overwhelming majority of First Congress petitions presented private claims." 8 Documentary History of the First Federal Congress 1789–1791, p. xviii (K. Bowling, W. DiGiacomantonio, & C. Bickford eds. 1998). The Court nonetheless holds that, at least in public employment cases, the Petition Clause and Speech Clause should be treated identically, so that since the Speech Clause does not prohibit retaliation against public employees for speaking on matters of private concern, neither does the Petition Clause. The Court gives two reasons for this: First, "[a] different rule for each First Amendment claim would . . . add to the complexity and expense of compliance with the Constitution" and "would provide a ready means for public employees to circumvent the test's protections," and second, "[p]etitions to the government . . . assume an added dimension when they seek to advance political, social, or other ideas of interest to the community as a whole." *Ante*, at 12–14.

Neither reason is persuasive. As to the former: The complexity of treating the Petition Clause and Speech Clause separately is attributable to the inconsiderate disregard for judicial convenience displayed by those who ratified a First Amendment that included *both* provisions as *separate* constitutional rights. A plaintiff does not

engage in pernicious "circumvention" of our Speech Clause precedents when he brings a claim premised on a separate enumerated right to which those precedents are inapplicable.

As to the latter: Perhaps petitions on matters of public concern do in some sense involve an "added dimension," but that "added dimension" does not obliterate what has traditionally been the principal dimension of the Petition Clause. The public-concern limitation makes sense in the context of the Speech Clause, because it is speech on matters of public concern that lies "within the core of First Amendment protection." *Engquist* v. *Oregon Dept. of Agriculture*, 553 U. S. 591, 600 (2008). The Speech Clause "has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United* v. *Federal Election Comm'n*, 558 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 23) (internal quotation marks omitted). The unique protection granted to political speech is grounded in the history of the Speech Clause, which "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Connick*, *supra*, at 145 (internal quotation marks omitted).

But the mere fact that we have a longstanding tradition of granting heightened protection to *speech* of public concern does not suggest that a "public concern" requirement should be written into other constitutional provisions. We would not say that religious proselytizing is entitled to more protection under the Free Exercise Clause than private religious worship because public proclamations are "core free exercise activity." Nor would we say that the due process right to a neutral adjudicator is heightened in the context of litigation of national importance because such litigation is somehow at the "core of the due process guarantee." Likewise, given that petitions to redress *private* grievances were such a high proportion of petitions

at the founding—a proportion that is infinitely higher if lawsuits are considered to be petitions—it is ahistorical to say that petitions on matters of public concern constitute "core petitioning activity." In the Court's view, if Guarnieri had submitted a letter to one of the borough of Duryea's council members protesting a tax assessment that he claimed was mistaken; and if the borough had fired him in retaliation for that petition; Guarnieri would have no claim for a Petition Clause violation. That has to be wrong. It takes no account of, and thus frustrates, the principal purpose of the Petition Clause.

The Court responds that "[t]he proper scope and application of the Petition Clause . . . cannot be determined merely by tallying up petitions to the colonial legislatures," *ante*, at 14, but that misses the point. The text of the Petition Clause does not distinguish petitions of public concern from petitions of private concern. Accordingly, there should be no doctrinal distinction between them unless the history or tradition of the Petition Clause justifies it. The mere fact that the Court can enumerate several historical petitions of public importance, *ante*, at 14–16, does not establish such a tradition, given that petitions for redress of private grievances vastly outnumbered them. Indeed, the Court's holding is contrary to this Court's historical treatment of the Petition Clause, assuming (as the Court believes) that the Clause embraces litigation: We have decided innumerable cases establishing constitutional rights with respect to litigation, and until today not a one of them has so much as hinted that litigation of public concern enjoys more of those rights than litigation of private concern. The Court's belief in the social importance of public petitions, and its reminiscences of some of the public-petition greats of yesteryear, *ibid.*, do not justify the proclamation of special constitutional rights for public petitions. It is the Constitution that establishes constitutional rights, not the Justices' notions of what is

important, or the top numbers on their Petition Hit Parade. And there is no basis for believing that the Petition Clause gives special protection to public petitions.

Rather than shoehorning the "public concern" doctrine into a Clause where it does not fit, we should hold that the Petition Clause protects public employees against retaliation for filing petitions unless those petitions are addressed to the government in its capacity as the petitioners' employer, rather than its capacity as their sovereign. As the Court states, we have long held that "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Ante*, at 11–12 (quoting *Engquist*, *supra*, at 599; internal quotation marks omitted). To apply to the Petition Clause context what we have said regarding the Speech Clause: When an employee files a petition with the government in its capacity as his employer, he is not acting "as [a] citize[n] for First Amendment purposes," because "there is no relevant analogue to [petitions] by citizens who are not government employees." *Garcetti* v. *Ceballos*, 547 U. S. 410, 421, 423–424 (2006). To be sure, the line between a petition addressed to government as the petitioner's employer and one addressed to it as sovereign is not always clear, but it is no more fuzzy than the line between matters of private and matters of public concern.[2] The criterion I suggest

——————

[2] Compare, *e.g., Alpha Energy Savers, Inc.* v. *Hansen*, 381 F. 3d 917, 927 (CA9 2004) (testimony concerning claim of employment discrimination by government contractor constituted matter of public concern because "[l]itigation seeking to expose . . . wrongful governmental activity is, by its very nature, a matter of public concern"), with *Padilla* v. *South Harrison R-II School Dist.*, 181 F. 3d 992, 997 (CA8 1999) (teacher's testimony approving sexual relationship between teacher and minor was matter of private concern because it "does not relate to the teacher's legitimate disagreement with a school board's policies"). And compare, *e.g.*, *Voigt* v. *Savell*, 70 F. 3d 1552, 1560 (CA9 1995) (speech regarding how judge handled two internal personnel matters was

would largely resolve the legitimate practical concerns
identified by the Court, *ante*, at 10–12, while recognizing
and giving effect to the difference between the Speech and
Petition Clauses.

Under what I think to be the proper test, the Third
Circuit judgment before us here should be reversed in part
and affirmed in part. The portion of it upholding Guarni-
eri's claim of retaliation for having filed his union griev-
ance must be reversed. A union grievance is the epitome
of a petition addressed to the government in its capacity
as the petitioner's employer. No analogous petitions to the
government could have been filed by private citizens, who
are not even permitted to avail themselves of Guarnieri's
union grievance procedure. Contrariwise, the portion of
the judgment upholding Guarnieri's claim of retaliation
for having filed his §1983 claim must be affirmed. Given
that Guarnieri was not an employee of the Federal Gov-
ernment, it is impossible to say that the §1983 claim was
addressed to government in its capacity as his employer. I
think it clear that retaliating against a state employee for
writing a letter to his Congressman about his state job
would run afoul of the Petition Clause. Assuming that the
§1983 lawsuit should be treated like a letter to a Con-
gressman for Petition Clause purposes—a proposition
which, I again emphasize, is doubtful, but which the par-
ties do not dispute in this case—retaliation for having filed
his lawsuit also violates the Clause.

---

matter of public concern because "[t]he public has an interest in know-
ing whether the court treats its job applicants fairly"), with *Maggio* v.
*Sipple*, 211 F. 3d 1346, 1353 (CA11 2000) (testimony at hearing con-
cerning employee grievance was matter of private concern because it
did "not allege . . . fraud or corruption in [defendant's] implementation
of its personnel policies and appeal procedures").