**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3348

_____

STACEY GOODALL-GAILLARD,
                                        Appellant
v.

N.J. DEPARTMENT OF CORRECTIONS; GEORGE HAYMAN, COMMISSIONER;
LYDELL SHERRER, ASSISTANT COMMISSIONER; ERIC STOKES, ASST.
ADMINISTRATOR; CHIEF DEAN YATAURO; CHIEF ANTONIO CAMPOS; CAPT.
RICHARD GILGALLON; LT. WILFRED MUNGRO; LT. WILLIAM ANDERSON;
SGT. DARRON DAYE; LUTHER GREGG; JOHN & JANE DOES; LANCE BYRD

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-09-cv-00954)
District Judge:  Honorable Kevin McNulty

_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 24, 2015

Before:  HARDIMAN, GREENAWAY, JR., and KRAUSE, *Circuit Judges*

(Filed: August 24, 2015)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, *Circuit Judge:*

Stacey Goodall-Gaillard appeals the grant of summary judgment in favor of the New Jersey Department of Corrections ("NJDOC") and individual employees at the NJDOC relating to various constitutional claims brought under 42 U.S.C. § 1983 and 42 U.S.C. § 1981, and gender discrimination and retaliation claims brought under Title VII and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq. For the reasons set forth below, we will affirm.

## I.

In 2009, Goodall-Gaillard, a corrections officer with the NJDOC, filed suit in the District Court alleging that she was the target of racial and gender discrimination. The bulk of these allegations stem from Goodall-Gaillard's belief that the NJDOC inadequately responded to her numerous complaints, treated her differently than other workers, and generally discriminated against her on the basis of race and gender. The District Court concluded that the Appellees were entitled to summary judgment on each claim. This appeal followed. [1]

## II.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), by showing that the

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

"non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof," *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007). To survive a motion for summary judgment, "the non-moving party must show specific facts such that a reasonable jury could find in its favor," *id.* at 424; "mere allegations are insufficient," *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). We exercise plenary review over a District Court's grant of summary judgment and, like the District Court, must draw all reasonable inferences in favor of the non-moving party. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 451 (3d Cir. 2006).

### III.

Goodall-Gaillard's appeal suffers from the same fundamental flaws as her briefs before the District Court. While it is clear that Goodall-Gaillard was dissatisfied with her position at the NJDOC and believes she suffered unfair and disparate treatment, she fails to connect the litany of accusations of gender and race discrimination to facts that are sufficient to support her claims. Goodall-Gaillard raises four general challenges to the grant of summary judgment, arguing that: (1) the Eleventh Amendment does not immunize the NJDOC and the individual defendants in their official capacity; (2) the constitutional claims were not legally deficient; (3) the claims brought pursuant to Title VII and the NJLAD were not legally deficient; and (4) the District Court failed to apply the appropriate summary judgment standard. We will address each below.

### A.

3

Goodall-Gaillard first challenges the District Court's holding that the Eleventh Amendment immunizes the NJDOC and the individual defendants in their official capacities from the constitutional claims, arguing that the NJDOC has received federal funds and has therefore waived sovereign immunity for itself and its officers. *See* Appellant's Br. 13-15. We may summarily dispose of this argument, for it is well established that Congress did not intend for § 1983 to abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 344-45 (1979), and that sovereign immunity bars § 1983 claims against states and state officers acting in their official capacity, *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66-67, 71 (1989).

## B.

As to the constitutional claims against the defendants in their individual capacities, Goodall-Gaillard fares no better. Reviewing the record as a whole, and considering "all of the surrounding circumstances," *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 980 (3d Cir. 1997), we agree with the District Court that Goodall-Gaillard's ordinary workplace grievances do not give rise to a First Amendment claim because they do not address matters of public concern. *See Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011). Despite bald allegations that she suffered gender and racial discrimination and was retaliated against when she complained of this discrimination, Goodall-Gaillard's actual complaints—such as her objection that she was subjected to more strenuous searches at the metal detector, or that she was given an additional assignment handling mail—reflect ordinary workplace grievances, rather than speech that "can be

4

fairly considered as relating to any matter of political, social, or other concern to the community." *Watters v. City of Phila.*, 55 F.3d 886, 892 (3d Cir. 1995) (internal quotation marks and citation omitted).

Goodall-Gaillard's claim that she was "unlawfully seized" in violation of the Fourth Amendment likewise fails. Appellees' App. 65. While Fourth Amendment protections may extend to "[s]earches and seizures by government employers or supervisors," *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987), we agree with the District Court that the Fourth Amendment does not provide a cause of action for unwanted sexual advances in the workplace, and Goodall-Gaillard points to no caselaw and offers no cogent argument supporting such a claim. *See Blunt*, 767 F.3d at 265 (explaining that "mere allegations are insufficient" to survive summary judgment).

We also agree that Goodall-Gaillard has failed to state a due process claim pursuant to the Fifth and Fourteenth Amendments, relating to the alleged theft of her firearm at the prison facility. As the District Court noted, moreover, Goodall-Gaillard's unsubstantiated allegation that her personal firearm was stolen by an NJDOC official was substantially rebutted by the Appellees' evidence showing that the firearm was merely transferred from a short-term storage area to a long-term storage area when she left work for health-related reasons, and that her firearm was returned to her immediately upon request. A prison facility's storage of a personal firearm that has been abandoned by an employee and the immediate return of that firearm when requested do not give rise to a due process violation. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that there is

5

no due process violation for an alleged deprivation of property where there is a "postdeprivation remedy for the loss").

On appeal, Goodall-Gaillard also argues, as a variation on her due process claims, that her suspensions from work for various disciplinary infractions violated her constitutional rights. Appellant's Br. 17. This permutation is no more availing, as the record reflects that Goodall-Gaillard was accorded due process in the form of appeal hearings for her suspensions. *See Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (holding that short suspensions without pay, for alleged disciplinary infractions, do not constitute due process violations, even absent a predetermination hearing). Moreover, it is plain from the record that, despite her unsupported allegations that she was not provided notice or an opportunity to be heard, Goodall-Gaillard was present at these hearings and permitted to speak on her own behalf. *See, e.g.*, Appellant's App. 361-63; 446-49.

Goodall-Gaillard next raises a constitutional claim for selective enforcement, alleging that she was "selectively targeted for discipline and forced to endure harsher working conditions." Appellees' App. 69. The District Court held that Goodall-Gaillard failed to establish the requisite elements for selective enforcement—i.e., "(1) that other similarly situated violators of [an] ordinance or law were treated differently, and (2) that this disparate treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor.'" *Goodall-Gaillard v. N.J. Dep't of Corr.*, No. 09-00954, 2014 U.S. Dist. LEXIS 86527, at *88 (D.N.J. June 24, 2014) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)). Putting aside the fact that Goodall-Gaillard

6

has failed to allege any ordinance or law at issue here, we agree with the District Court

that her ordinary workplace complaints, such as allegations that she was given the

"worst" jobs, or was not provided assistance as other employees were, paired with bald

allegations of race and gender discrimination, fail to establish the necessary elements for

her constitutional claim. *See McCabe*, 494 F.3d at 424; *see also Blunt*, 767 F.3d at 265.

Goodall-Gaillard also attempts to raise claims for unspecified constitutional

violations under 42 U.S.C. § 1981. Again, we may summarily dispose of this argument

because, as the District Court properly noted, § 1981 does not provide a private right of

action against state actors. *McGovern v. City of Phila.*, 554 F.3d 114, 120-21 (3d Cir.

2009).

## C.

Goodall-Gaillard's claims for gender discrimination and retaliation similarly fail,

as they are not sufficiently tethered to record evidence to survive summary judgment.

Under the familiar *McDonnell Douglas* burden-shifting framework, if an employee

establishes a prima facie case of discrimination, the burden first shifts to the employer to

articulate a legitimate, non-discriminatory reason for its action, before returning to the

employee to demonstrate pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973).[2] Upon a careful review of the record, we agree with the District Court that

---

[2]    The NJLAD claims are analyzed under the same framework. *See, e.g.*, *Craig v. Suburban Cablevision, Inc.*, 660 A.2d 505, 508 (N.J. 1995) (applying the *McDonnell Douglas* burden-shifting framework in claims brought pursuant to the LAD); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087-88 (3d Cir. 1996) (applying the same

Goodall-Gaillard failed to establish a prima facie case for gender discrimination because she produced no evidence that she suffered an adverse employment action or that the alleged action occurred under circumstances that gave rise to an inference of discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Goodall-Gaillard's allegations of disparate treatment—e.g., that she was placed on second shift and treated differently than those on first shift, and that, unlike other employees, she was denied assistance when requested and then disciplined for failing to complete her work—absent any evidence that the alleged disparate treatment was motivated by gender animus, does not create an inference of gender discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (explaining that while "not onerous," establishing a prima facie case requires the employee to show she suffered an adverse employment action "under circumstances which give rise to an inference of unlawful discrimination"); *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (the employee "must establish some causal nexus between [her] membership in the protected class" and the adverse employment action).

The retaliation claims are reviewed under the same burden-shifting framework. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). As the District Court correctly held, the evidence was likewise insufficient to support a prima facie case for retaliation because Goodall-Gaillard failed to show that she was engaged in protected activity and, even if she was, that the NJDOC retaliated against her for that activity. *See*

analysis to plaintiff's retaliation claims under Title VII and the LAD).

8

*id.* at 920. Most of Goodall-Gaillard's complaints to the NJDOC's Equal Employment Division, such as her complaints about work assignments or that she had to submit to more strenuous searches at the metal detector, do not allege gender or racial discrimination and are therefore not protected activity. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (explaining that "general complaint[s] of unfair treatment" are not protected activity). While Goodall-Gaillard did make a single unsubstantiated complaint alleging sexual harassment which may constitute protected activity, there was no evidence that the NJDOC retaliated against her in response to that sexual harassment complaint. *See Woodson*, 109 F.3d at 920.

### D.

Finally, Goodall-Gaillard argues that the District Court misapplied the summary judgment standard, urging us that we "can easily conclude" from a reexamination of the entire record "that there are material issues in dispute." Appellant's Br. 12. We disagree. Rather than pointing to any genuine dispute of material fact, or any error in the District Court's decision, Goodall-Gaillard's brief on appeal merely repeats her general allegations of gender and racial discrimination. Moreover, the District Court's opinion painstakingly categorizes and outlines, over twenty-eight pages, the voluminous factual allegations and record evidence before proceeding with a careful analysis of each separate claim. After a diligent review of the record, we agree with the District Court that no genuine disputes of material fact remain, that Goodall-Gaillard failed to show

9

specific facts sufficient for a reasonable jury to find in her favor as to any of her claims,

and that the Defendants were, therefore, entitled to judgment as a matter of law.[3]

\* \* \*

For the stated reasons, and for all the reasons outlined in the District Court's

careful and thorough opinion, we will affirm.

---

[3] In her statement of issues, Goodall-Gaillard also asks "[w]hether the two year delay in rendering a decision . . . was prejudicial to the Plaintiff and therefore requires and warrants presentment to a jury." Appellant's Br. 8. However, Goodall-Gaillard does not include a discussion on this issue in her brief. Given that the matter was not assigned to Judge McNulty until August 1, 2012, the multitude of claims, and the time commitment evident in the District Court's thorough decision, a longer than usual delay appears justified. In any event, delay in reaching a decision does not, alone, provide grounds for reversal or remand.