**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2002
_____

MICHAEL BECKINGER;
ADAM BLAKE;
DAVID KERESTES;
PAUL SAXON;
JUSTIN WARDMAN,

Appellants

v.

TOWNSHIP OF ELIZABETH;
DONALD R. SIMILO, Commissioner;
JOANNE BECKOWITZ, Commissioner;
ROBERT THOMAS, Commissioner;
HELEN KOCHAN, Commissioner;
EDWARD GRONLUND, Commissioner;
ROBERT H. KEEFER, Commissioner;
LARRY VOTA, Commissioner;
CHIEF OF POLICE ROBERT W. MCNEILLY;
ADMIN. SERGEANT WILLIAM K. BLACK,
individually and in their capacity
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-08-cv-00432)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
May 13, 2011

Before:   SMITH, CHAGARES, and VANASKIE, *Circuit Judges*

(Filed: June 29, 2011)

_____

OPINION OF THE COURT

_____

VANASKIE, *Circuit Judge*.

At issue on this appeal is whether the District Court erred in sustaining the defense of qualified immunity to Appellants' First Amendment claims and in declining to exercise supplemental jurisdiction over Appellants' state law claims. Discerning no error, we will affirm the District Court's judgment.

I.

As we write only for the parties, who are familiar with the facts and procedural history of the case, we relate the background of this case only to the extent that it is essential to our own analysis. Appellants Michael Beckinger, Adam Blake, David Kerestes, Paul Saxon, and Justin Wardman are police officers employed by Appellee Elizabeth Township. In addition to Elizabeth Township, Appellants named as defendants Appellees Chief of Police McNeilly and Administrative Sergeant Black, township employees who had positions of authority within the police department.

Elizabeth Township has an ordinance prohibiting on-street parking in certain areas of residential districts when off-street parking is available. To enforce this ordinance, the township police would issue parking citation tags to offenders. First, however, township policy directed officers, upon receipt of a complaint, to investigate by knocking on the door of the residence believed to be associated with an illegally parked vehicle. The

2

officer would then attempt to ascertain the owner's identity and the reason that the vehicle was parked on the street. At that point, the officer would direct the owner to move the vehicle, rather than immediately issuing a citation. Apparently, if the owner did not cooperate or could not be located, a citation would be issued. In 2005, the township issued nineteen parking citations, and issued only seven in 2006.

In early 2007, McNeilly and Black recognized that the township citation forms were out-of-date, containing incorrect addresses and payment directions. Accordingly, on January 16, 2007, Black issued Administrative Sergeant Memorandum No. 07-06, directing all township officers not to use the township citation forms for parking offenses, and instead to use state traffic citation forms. This memorandum also outlined detailed procedures for implementing the parking ordinance:

> In order to be fair to all concerned, state tags will be issued and any person who wishes to contest the situation will be directed to do so by requesting a hearing in front of the magistrate. Officers are reminded that it may be necessary, in some circumstances, to knock on a residents [sic] door to clarify that a vehicle or vehicles in violation are actually connected with that resident, prior to issuing a citation.

(A. 51.) Within a week of this memorandum, six township police officers, claiming a need to clear the roads following a heavy snowfall, issued approximately 75 parking citations to township residents. The issue quickly outraged the public. Township residents began to complain about the incident at public supervisors' meetings, and it ultimately came to the attention of two major area newspapers.

In an effort to quell the public outrage, McNeilly issued a memorandum to the six officers. McNeilly indicated his concern about the spike in ticket-writing, and directed

3

offers to write a memorandum answering a list of specific questions intended to help him understand whether a drastic change in local conditions prompted the surge in parking tickets. In response, several officers wrote memoranda indicating that they did not attempt to contact the vehicle owners prior to writing citations.

On January 30, 2007, Black, at McNeilly's direction, issued yet another memorandum, No. 07-17, to the officers:

> Any officer that receives a notice from the magistrates [sic] office, regarding hearings set for "Township Ordinance – Parking Violations" or "Any State Parking Violations", [sic] shall not attend those hearings. No overtime will be authorized for officers to attend these type [of] hearings.

(A. 56.)

On or about January 31, 2007, a magisterial district judge issued "Notice of Trial / Summary Case" to the individuals who received parking tickets, with copies to the officers who issued the citations. Appellant Saxon attended a parking citation hearing and submitted a request for overtime pay in connection with his attendance. He was subsequently disciplined for his action with a three-day suspension, which was upheld by the board of commissioners and a neutral arbitrator after a grievance hearing. Although receiving similar notices, Appellants Beckinger and Wardman did not attend any parking citation hearings connected with the citations that they issued. Appellants Kerestes and Blake did not issue any parking citations during the relevant time period, and consequently were not called to, nor did they attend, any hearings.

Appellants commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania, on February 12, 2008, and it was removed to the United States

4

District Court for the Western District of Pennsylvania on March 31, 2008. Appellants brought seven claims against the township, its commissioners, McNeilly, and Black. By the time of the motion for summary judgment at issue here, the Appellants' claims had been reduced to only three against the township, McNeilly and Black: retaliation and prior restraint in violation of the First Amendment; slander per se; and intentional infliction of emotional distress. On March 17, 2010, the District Court found that the township, McNeilly and Black were entitled to qualified immunity with respect to the retaliation and prior restraint claims brought under 42 U.S.C. § 1983, and remanded the state law claims to the Court of Common Pleas of Allegheny County, Pennsylvania. This appeal followed.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

A.

We exercise plenary review over an appeal from a grant of summary judgment. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 369 (3d Cir. 2001). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

Appellants argue that, by issuing Memorandum No. 07-17, the township, Chief McNeilly and Administrative Sergeant Black violated their First Amendment right, as public employees, to attend court hearings and offer testimony. In *Reilly v. Atlantic City*, 532 F.3d 216 (3d Cir. 2008), we recognized the right of a public employee to testify in a

5

criminal matter without fear of retaliation when compelled to do so by subpoena. Previously, in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Court had held that, while "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern," *id.* at 417, "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities," *id.* at 424. It was unclear from *Garcetti* whether a public employee's right to testify was speech protected by the First Amendment, or whether it was permissibly subject to "managerial discipline." In *Reilly*, a police officer filed suit against his superiors, claiming that they retaliated against him because of his participation, including trial testimony, in investigations launched against a superior and his associates. His superiors asserted qualified immunity based on *Garcetti*.

Noting that "*Garcetti* offers no express instruction on the application of the First Amendment to the trial testimony of a public employee," *Reilly*, 532 F.3d at 231, we reached the question of "whether truthful trial testimony arising out of the employee's official responsibilities constitutes protected speech." *Id.* at 230. Finding that "[i]t is axiomatic that every citizen owes to his society the duty of giving testimony to aid in the enforcement of the law," *id.* at 228 (internal quotation marks omitted), we concluded:

> When a government employee testifies truthfully, s/he is not simply performing his or her job duties; rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence. Ensuring that truthful testimony is protected by the First Amendment promotes the individual and societal interests served when citizens play their vital role in the judicial process. Thus, the principles discussed in *Garcetti* support the need to protect truthful testimony in court.

6

*Id.* at 231 (internal quotation marks and citations omitted).

Appellees argued in the District Court, and renew their argument here, that they are entitled to qualified immunity even if their conduct infringed First Amendment rights. The doctrine of qualified immunity exists because "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity applies to "government officials performing discretionary functions . . . shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* It affords "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once an official has asserted qualified immunity, we must determine whether there is an actionable violation of a federally protected right that is "clearly established" at the time of its violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (setting forth general framework).[1]

Appellants argue that their right to present testimony was clearly established at the time of the violations. "A plaintiff need not show that the very action in question has previously been held unlawful, but needs to show that in light of preexisting law the unlawfulness was apparent." *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001).

---

[1] Saucier was overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009), which granted more flexibility to courts in determining the order in which the *Saucier* test should be applied.

*Reilly*, which acknowledged First Amendment protection for a government employee's compelled attendance at a court proceeding to give truthful testimony, was decided on July 1, 2008. The events at issue here took place, as noted above, in January, 2007. *Garcetti*, with its distinction between a public employee's right to speak in "certain circumstances," *Garcetti*, 547 U.S. at 417, and permitted discipline with respect to "an employee's expressions made pursuant to official responsibilities," *id.* at 424, left the state of the law unsettled in this area. Indeed, we recognized this in *Reilly* when we stated that "*Garcetti* offers no express instruction on the application of the First Amendment to the trial testimony of a public employee." *Reilly*, 532 F.3d at 231. As the District Court reasoned, after *Garcetti* and prior to our decision in *Reilly* on July 1, 2008, the status of First Amendment protection for government employee attendance at hearings as part of employment duties was uncertain. To the extent that *Reilly* clarified the issue, it did so in the context of testimony presented under compulsion of a subpoena in a criminal trial. *Reilly*, therefore, does not stand for the proposition that a law enforcement officer has a First Amendment right to attend voluntarily a parking ticket adjudication hearing in derogation of direct orders to the contrary. Thus, it cannot be said that the right asserted in this case was clearly established when Memorandum No. 07-17 was issued.

Moreover, *Reilly* is also distinguishable on the ground that it involved discipline for the content of the employee's testimony. In this case, by way of contrast, the employer made a decision not to pursue parking violation charges against any alleged violators as part of an effort to correct what it felt was an overzealous enforcement of a

8

township parking ordinance. Recently, the Court reiterated that courts must be reluctant to interfere in what is essentially "'a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'" *Borough of Duryea v. Guarnieri*, No. 90-345, __ U.S. __, slip op. at 5 (Jun. 20, 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). The Court explained that "substantial government interests . . . justify a cautious and restrained approach to the protection of speech by public employees . . . ." *Id.* at 8. Indeed, emphasizing the distinction made in *Garcetti*, the Court in *Guarnieri* emphasized that "'[w]hen someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her.'" *Id.* at 5-6 (quoting *Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality opinion)). The instant case, rather than focusing on an employer's retaliation based on the substance of testimony, is far more akin to an employer's attempt to restrain the actions of employees which were considered to "detract from the agency's effective operation." In this case, a decision was made to not devote public resources to pursuing parking citations issued under unique circumstances. Our holding in *Reilly* certainly did not address this particular context. Nor have the Appellants cited any authority that would preclude a municipality from instructing its law enforcement officers from appearing at hearings to enforce parking violations. Under this set of facts, it simply cannot be said that the Appellants' "right" to appear at hearings was "clearly established."

In summary, we find that a government employee's right to attend a court proceeding to enforce parking violations was not clearly established at the time

Memorandum No. 07-17 was issued.[2]  Thus, we will affirm the District Court's finding

of qualified immunity for Appellants McNeilly and Black and its concomitant grant of

summary judgment on this basis.[3]

B.

Appellants apparently also seek to appeal the District Court's remand of the claims

over which it exercised supplemental jurisdiction.[4]  The issue of remand of state law

claims is governed by 28 U.S.C. § 1367(c)(3), which provides that  "[t]he district courts

may decline to exercise supplemental jurisdiction over a [state law] claim if . . . the

district court has dismissed all claims over which it has original jurisdiction."  We review

a District Court's decision to remand under § 1367 for abuse of discretion.  *Anderson v.*

*Wachovia Mortgage Corp.*, 621 F.3d 261, 283 (3d Cir. 2010).

---

[2] It bears emphasizing the point that the one instance of discipline imposed as a result of Memorandum No. 07-17 was the subject of a formal grievance that was denied by a neutral arbitrator.  Thus, Appellants had the ability to contest the discipline within the framework of established dispute resolution processes.

[3] The District Court also granted summary judgment to the township, apparently also on the basis of qualified immunity.  It is well-established that no qualified immunity defense exists for municipalities under 42 U.S.C. § 1983.  *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 n.18 (1980) ("[T]here is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify the qualified immunity accorded [to the municipality].")  Because Appellants did not raise this issue in their appeal, however, it is waived.  *See Graden v. Conexant Systems, Inc.*, 496 F.3d 291, 296 n.7 (3d Cir. 2007) ("Absent compelling circumstances not present here, failing to raise an argument in one's opening brief waives it.")

[4] It is unclear whether Appellants actually seek to appeal this remand to the state court, as their argument on this issue is essentially limited to the issue of whether "high public official immunity" applies to the remanded state law claims.  The District Court did not address this question and it is not properly before us.

"[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Here, because the two remaining claims are state-law claims, judicial economy, convenience and fairness to the parties counsel *against* retaining supplemental jurisdiction over them. Accordingly, we find that the District Court did not abuse its discretion in remanding these claims to the state court.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.