NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3190
_____

ANTONIA GARCIA,
Appellant

v.

NEWTOWN TOWNSHIP; JOSEPH CZAJKOWSKI;
THOMAS JIRELE; ROBERT CIERVO; PHILLIP CALABRO;
MICHAEL GALLAGHER; JERRY SCHENKMAN;
sued individually and jointly, held liable jointly and individually
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-09-cv-03809
District Judge: The Honorable J. Curtis Joyner


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 18, 2012

Before: SMITH and FISHER, *Circuit Judges*
and STEARNS, *District Judge*[*]

(Filed: May 22, 2012)


_____

OPINION

_____

[*]The Honorable Richard G. Stearns, United States District Judge for the United
States District Court of Massachusetts, sitting by designation.

1

STEARNS, *District Judge.*

Antonia Garcia appeals the District Court's grant of summary judgment to Newtown Township, her former employer, and the Township Manager,[1] pretermitting Garcia's claims of unlawful employment discrimination based on race, sex, and age, in violation of various federal and state anti-discrimination statutes,[2] and her claim of First Amendment retaliation. Finding no error, we will affirm the District Court's order.

## BACKGROUND[3]

In June of 2007, Garcia was hired by then-acting Township Manager John Boyle as his administrative assistant. The offer letter, which Garcia signed on June 30, 2007, stated that the "position is classified as an exempt, salaried position

---

[1] The District Court had earlier dismissed the Board of Supervisors as defendants in their individual capacities. Garcia does not appeal the dismissal.

[2] The claims included violations of 42 U.S.C. § 1983 for first amendment retaliation (Count I), violation of procedural due process (Count II), and a *Monell* (*v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978)) claim (Count III); Title VII and Age Discrimination in Employment Act (ADEA) violations (Count IV); and Pennsylvania Human Relations Act (PHRA) violations (Count V).

[3] As we are reviewing a grant of summary judgment, we recount the material facts in the light most favorable to Garcia as the nonmoving party. *See Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 377 (3d Cir. 2005). We do, however, consider credible evidence submitted by the moving party that is essentially uncontradicted. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 271-272 (3d Cir. 2007).

under the terms of the Federal Fair Labor Standards Act." J.A. at 181. The letter further stated that "you will be expected to read and understand Part 7 of the Newtown Township Administrative Code of 2000, titled the ‚Employee Relations Manual.‟. . . A copy of this document is enclosed." *Id.* at 182-183. Part 7E, Section 9 of the Manual stated as follows.

> It is the policy of the Township that all employees who do not have a written employment agreement or do not work under a labor agreement or contract, are employed at the will of the Township for an indefinite period. Employees may resign from the Township after proper notice and may be terminated by the Township at any time, for any reason, with or without notice. . . . Nothing contained in this manual, employee handbooks, employment applications, Township memoranda, employment letters or other materials provided to employees in connection with their employment shall restrict the Township‟s right to terminate an employee at any time or for any reason. These documents shall not create an express or implied contract of employment for a definite period.

*Id.* at 136. The first few months of Garcia‟s employment were uneventful. She learned her job duties and responsibilities and made friends with co-workers. Among them was Pat Davidson. At Davidson‟s invitation, Garcia joined Davidson and Boyle on several occasions for after-work drinks. In January of 2008, having come to suspect that Davidson and Boyle were having an affair, Garcia told Davidson that she no longer wanted to socialize after work. She explained to Davidson that she "didn‟t feel right about it . . . [b]ecause they were both married." *Id.* at 830. After this rebuff, the friendship cooled.

Around this time, Joseph Czajkowski was hired as the permanent Township Manager, and Boyle reverted to his position as Assistant Manager.[4] Boyle had applied for the Manager's job, and Garcia believed that he was bitter at having not been selected. Following the rejection, Boyle began to make "life difficult" for Garcia. *Id.* at 831. According to Garcia, this included constant reminders that he was still "the boss," repeated invasions of her personal space, fixed stares, the "silent treatment," the denial of training opportunities, assigning her work during her lunch hour, and on one occasion, pointing his finger in her face and screaming "when I tell you to do something you do it." *Id.* at 831-832. She also recounts an occasion when Czajkowski asked her to "put something on the website," a task that she believed was Boyle's responsibility. When Boyle refused Garcia's request that he do the posting instead, Czajkowski, who had overheard the conversation, yelled over to Boyle, "just do it." Garcia claims that Boyle silently mouthed the word "bitch" at her. *Id*. at 831.

Matters escalated further when Boyle complained about Garcia to Czajkowski. In an email dated March 20, 2008, entitled "Personnel Issue - Toni," Boyle criticized Garcia's job performance in a number of respects, including her

---

[4] According to Garcia, soon after Czajkowski started on the job, he asked her the origin of her last name. She told him her father was born in Spain (although her mother is of Anglo-Saxon heritage). Czajkowski responded "you can cause a lot of trouble with that name." *Id.* at 856.

failure to "make her boss's priorities her priorities." Czajkowski testified that he also received complaints about Garcia from other employees, including Elaine Gibbs, the Finance Director,[5] Bill Wert, a former department head,[6] and Kathleen Kimble,[7] another employee. *Id.* at 491. According to Czajkowski, the complaints were about "her being difficult to work with." *Id.* at 492. In January of 2008, during an annual review, Czajkowski gave Garcia a one-percent raise instead of the four-percent raise awarded to most other Township employees.

In April of 2008, Garcia asked to meet with Czajkowski. According to Garcia, Czajkowski began the meeting by telling her that she was a "disruptive employee." *Id.* at 834. Garcia began to cry and said that she was under stress because of Boyle's and Davidson's harassment. Czajkowski asked if she wanted to make a formal complaint. Garcia declined, but afterwards contacted a Township Supervisor, Jerry Schenkman, and arranged to meet with him later that afternoon.

---

[5] Garcia admitted to having had a personality conflict with Gibbs, and conceded that in an email she sent to Lisa Russo, the former administrative assistant, she called Gibbs "a bitch." *Id.* at 893.

[6] A memo from Wert to Czajkowski dated July of 2008 identified two incidents in which Garcia "became flustered, defensive, combative and argumentative which created a difficult working environment to complete tasks." *Id.* at 193.

[7] Asked about her personal conflict with Kimble, Garcia testified, "[s]he was just mean. . . . She just wasn't a nice person." *Id.* at 841.

Garcia complained to Schenkman about Czajkowski, Boyle, and Davidson, and also told him that Czajkowski and Boyle were frequently absent from work.[8]

In May of 2008, Czajkowski presented Garcia with a written memorandum entitled "Job Performance." The memorandum identified "goals and objectives" for Garcia and emphasized the need for the "timely and professional provision of administrative services." *Id.* at 194. The memorandum continued:

> [y]our main duties are to carry out the directives of the Township Manager and Assistant Township Manager. . . . Much of the work performed by you is seen by the Board of Supervisors and the general public. Therefore it is essential that everything be checked and rechecked for correct form and detail. Please work to ensure that documents and packets that are sent to the board and public are free of errors and that all appropriate documentation is provided. We are not a large office and I require a work place environment characterized by respect and dignity . . . please . . . afford all department heads the respect demanded of their positions. I also understand that this position can carry with it a level of stress. Please let me know should you need assistance with dealing with any job related stress as the Township does have an employee assistance program available to you. We will have a follow up meeting in (90) ninety days to further discuss measurement of our goals and your performance. Please feel free to speak to me at any time regarding work or performance issues.

*Id.*[9] Garcia states that Czajkowski ordered her to keep "things internal" when he gave her the evaluation. *Id.* at 885.

---

[8] Schenkman took no action on Garcia's complaints.

[9] In July or August of 2008, Garcia complained to Czajkowski that other employees were being offered training classes that were not offered to her. She testified that, in response, Czajkowski screamed, "You're always looking for commies under the bed." *Id.* at 850.

In September of 2008, Czajkowski terminated Garcia's employment. Garcia requested a hearing before the Board of Supervisors, but one was never held.[10] Garcia also filed complaints with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. Garcia was replaced by a woman from a temporary employment agency, who was eventually offered full-time employment by the Township. Garcia's replacement was in her thirties. Garcia was fifty-one years old when she was terminated.

In August of 2009, Garcia brought this action in the Eastern District of Pennsylvania. In December and January of 2010, the parties filed cross-motions for summary judgment. In late March of 2011, Garcia filed a motion to supplement the record with additional evidence, which was denied. The District Court granted summary judgment to defendants on June 9, 2011.[11]

DISCUSSION

---

[10] The Employee Manual states that "[e]mployees not subject to labor agreements may request a hearing of the Board of Supervisors as described in this Administrative Code, in the event of a suspension in excess of 10 working days and dismissal. Board of Supervisors decisions in such matters are final." *Id*. at 135.

[11] The District Court initially granted summary judgment to all defendants on all claims with the exception of the First Amendment retaliation claim against Czajkowski. On a motion for reconsideration, the District Court granted summary judgment to Czajkowski on the retaliation claim as well.

Our review of the District Court's grant of summary judgment is plenary. *Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 179 (3d Cir. 2011).[12] Summary judgment is appropriate when the movant demonstrates that there is no "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A material fact is a fact that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation omitted). "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

### *Claim of Retaliation for Engaging in Protected First Amendment Activity*

The District Court specified the three instances of alleged protected activity on which Garcia based her First Amendment retaliation claim: (1) her refusal to socialize with Boyle and Davidson after work; (2) her complaints to Schenkman

---

[12] The District Court had jurisdiction to hear the case under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

8

and Ted Schmidt[13] that Czajkowski and Boyle were "never . . . at work"; and (3) her complaints to Schenkman and Schmidt that Czajkowski had failed to investigate the harassment of her by Boyle and Davidson. The District Court held that the instances cited by Garcia did not constitute protected speech, or had not been shown to have played a causative role in her termination. We agree.

To make out a prima facie case of retaliation in violation of the First Amendment under 42 U.S.C. § 1983, Garcia must show:

> (1) that [she] engaged in a protected activity, (2) that defendants" retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity.

*Lauren W.*, 480 F.3d at 267 (citations omitted). *See also Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The showing of causation is critical. Summary judgment will be granted on a First Amendment retaliation claim where there "is simply no basis in the evidence" to make the causal link. *Lauren W.*, 480 F.3d at 272.

A reviewing court must first determine whether the expression at issue was in fact protected speech. *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.

---

[13] Schmidt and Garcia were neighbors and often walked their dogs together. Schmidt had no connection with Township government.

9

1993).  The determination is a matter of law.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).  In the government employee context, the consideration is two-fold.  First, the court must determine the capacity in which the government employee was acting when the speech was uttered.  When employees are speaking in their official capacities, they "are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  Second, if the employee is speaking in a private capacity, the court must determine whether her speech implicated a First Amendment "matter of public concern." *Id.* at 423; *see also Hill*, 455 F.3d at 241-242. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-148 (1983).  Matters of inherent concern to the public include official malfeasance, abuse of office, and neglect of duties.[14]  *See Holder*, 987 F.2d at 195.  On the other hand, internal complaints about workplace management and matters that are articulated solely because of their personal effect on the employee

---

[14] When a public employee's speech touches on a matter of public – as opposed to workplace – concern, any response by the employer to that speech is subject to a balancing test weighing the interest of the employee in speaking freely against the interest of the employer in preserving workplace discipline and ensuring the efficient delivery of public services. *Garcetti v. Ceballos*, 547 U.S. 410, 418-419 (2006); *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968).

are not protected speech. *See Garcetti*, 547 U.S. at 418. *See also Foraker v. Chaffinch*, 501 F.3d 231, 238-243 (3d Cir. 2007) (abrogated on other grounds by *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011)); *Spiegla v. Hull*, 371 F.3d 928, 938 (7th Cir. 2004) (quoting *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002)).

Garcia's complaints to Schenkman and Schmidt about her discomfiture over what she suspected was an extramarital liaison between Boyle and Davidson, and her frustration at Czajkowski's failure to vigorously investigate her complaints of harassment, involved internal workplace matters and personal grievances that clearly fall outside the sphere of First Amendment protection. Garcia's complaints about Czajkowski's and Boyle's workplace absences, suggesting as they do possible malfeasance on their part, might be seen as standing on firmer ground. However, we do not dwell on the possibility, as we agree with the District Court that Garcia made no showing that Czajkowski *knew* of her private conversations with Schenkman and Schmidt, much less their contents.[15] *See Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for

---

[15] Garcia's complaints to Schenkman about her superiors' lax work habits, to the extent that she sought Schenkman out in his capacity as a Township Supervisor, might well fit within the category of nonactionable *Garcetti* speech. *See Garcetti*, 547 U.S. at 418. *See also Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) ("[W]hen a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job.").

protected conduct to be a substantial or motivating factor in a decision, the decision-makers must be aware of the protected conduct.").[16]

### *Violation of Due Process/Property Interest*

Garcia does not contest the District Court's finding that she did not have a protected due process property interest in her job. *See Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) ("[A]n at-will employee has ,no property interest" in [his or her] job sufficient to trigger due process concerns.") (citation omitted). Garcia instead presses the argument that because the Township Employee Manual mandated that claims of harassment be investigated, and in her case no investigation occurred, she was denied her right to procedural due process.[17] The argument lacks merit. The Manual does state that "Newtown Township will investigate all reports of prohibited harassment." J.A. at 129. However, the Manual defines "prohibited harassment" as offensive conduct based on "sex, age, race, religion, national origin, ethnicity, disability, sexual

---

[16] We need not address Garcia's contention that the District Court erred in rejecting her §1983 claim against the Township under *Monell*, 436 U.S. at 690. Because Garcia cannot show that a constitutional violation occurred, she cannot demonstrate that any constitutional violation was authorized, sanctioned, or condoned on the part of the Town or its officials. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

[17] While the District Court did not address the procedural due process argument, it was raised by Garcia (if only tangentially) in the proceedings below, and we consider it preserved.

preference, and any other protected classification." *Id.* at 128. When Garcia complained to Czajkowski that Boyle and Davidson were "harassing her," she did not claim that their conduct fell within any of the prohibited categories. At most the record suggests that Garcia was the victim of personal animosities and petty office politics (much of which she appears to have invited by her constant feuding with her co-workers).

### *Employment Discrimination Pursuant to Title VII, the ADEA,[18] and the PHRA[19]*

We agree with the District Court that Garcia failed to produce evidence sufficient to discredit the Township's proffered non-discriminatory reasons for her termination. Garcia's principal argument on appeal is that the District Court erred by proceeding under the *McDonnell Douglas* (*v. Green*, 411 U.S. 792 (1973)) framework after she had provided direct evidence of gender and racial animus.[20]

---

[18] Garcia does not challenge the District Court's dismissal of her age discrimination claim. Garcia set forth no evidence suggesting that age was a determinative factor in her termination. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350-2351 (2009).

[19] "Claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). The same burden-shifting framework is also used in § 1981 and § 1983 cases. *See McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 826 n.3 (3d Cir. 1994).

[20] We need not address Garcia's sex-based hostile work environment claim at any length. "Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment." *Weston v. Pennsylvania*,

Garcia is generally correct that the *McDonnell Douglas* paradigm does not apply in the face of direct evidence of discriminatory animus. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989). Direct evidence may take the form of a workplace policy that is discriminatory on its face, or statements by decision makers that reflect the alleged animus and bear squarely on the adverse employment decision. As a practical matter, "only rarely will a plaintiff have direct evidence of discrimination." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

Direct evidence does not include stray remarks that are made in a context unrelated to the employment decision, particularly if they are remote in time. *See Fuentes v. Perskie*, 32 F.3d 759, 767 (3d Cir. 1994) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). *See also Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 n.2 (3d Cir. 2002). Boyle's mouthing of the word "bitch" under his breath, and Czajkowski's statement that Garcia had the ability to "cause a lot of trouble" because of her last name, are the sort of off-hand and temporally remote comments that fall well short of direct evidence of a

251 F.3d 420, 425-426 (3d Cir. 2001) (citations omitted). "[T]he harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment." *Id*. at 426. There is no evidence in the record that Garcia was the object of unwelcome or derogatory sexual conduct while she was employed by the Township.

discriminatory animus.[21] *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 513 (3d Cir. 2004) (citation omitted) (remarks that are "unrelated to the decisional process itself are not direct evidence").[22]

We also reject Garcia's fallback argument that even under *McDonnell Douglas* she should have prevailed.[23] She challenges the veracity of the explanation proffered by defendants of the non-discriminatory reasons for her

---

[21] Garcia also states that shortly after she arrived at the Township, she complained to Boyle (who had hired her) that she had overheard some employees saying that "Mexicans are dirty." Compl. ¶ 51. Boyle told her that the employees were "just kidding," and took no further action. The derogatory statements are not attributed to Boyle. Nor was he shown to have been involved in Czajkowski's decision to terminate Garcia some sixteen months later.

[22] Garcia attempts to inject into the record a comment that she attributes to Charles Patton, a friend and disgruntled former Township Police Chief who she concedes was "still kind of angry at [Township officials] so he has nothing really nice to say about them." According to Garcia, Patton told her that he had been present at a Township meeting in the spring of 2008 where he overheard Czajkowski use a gender-specific slur to describe Garcia and another woman. We do not consider unsworn third-party hearsay of sufficient weight to defeat a motion for summary judgment. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

[23] The burden shifts to the employer under the *McDonnell Douglas* framework only after a plaintiff demonstrates a prima facie case of discrimination. This first step requires a plaintiff to show that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was fired from that position; (4) "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-411 (3d Cir. 1999) (internal citations omitted). *See Smith*, 589 F.3d at 691 ("Throughout this burden-shifting exercise, the burden of persuasion . . . remains on the employee.") (citation omitted). We will assume, as did the District Court, that Garcia satisfied her not very onerous burden of showing a prima facie case.

termination,[24] but presents no evidence to demonstrate any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Township's explanation such "that a reasonable factfinder could rationally . . . infer „that the employer did not act for [the asserted] non-discriminatory reasons.‟" *Fuentes*, 32 F.3d at 765 (internal citations omitted).[25]

For the foregoing reasons, we will affirm the order of the District Court.

---

[24] Garcia objects to the District Court's reliance on the emails exchanged between Czajkowski and Boyle highlighting their increasing dissatisfaction with Garcia's performance and her personality conflicts with co-workers. She complains that because she was not privy to the emails, she was unaware that Czajkowski was displeased with her performance. This is beside the point. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997) (quoting *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988)) ("The company is under no obligation to warn plaintiff of complaints regarding his performance and, if anything, the effect of such evidence is equivocal, perhaps indicating that plaintiff was receiving the benefit of the doubt.").

[25] We briefly address Garcia's contention that the District Court improperly refused her permission to supplement the record with the unsworn affidavit of Patricia Purks, a former Township employee, after all discovery had closed and after the motions for summary judgment had been filed. There was no abuse of discretion. *See DeLong Corp. v. Raymond Int'l, Inc.*, 622 F.2d 1135, 1140 n.5 & cited cases (3d Cir. 1980) ("Other courts have similarly declined to receive affidavits not submitted in a timely fashion.") (overruled on other grounds by *Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981)). *See also* Fed. R. Civ. P. 56(c)(4).