NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3334
_____

VINCENT MORRIS,

Appellant

v.

THE PHILADELPHIA HOUSING AUTHORITY; PHA-TENANT SUPPORT
SERVICES, INC.;
CARL GREENE (individually and in his official capacity);
ASIA CONEY (individually and in her official capacity);
DIANE ROSENTHAL (individually and in her official capacity)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-10-cv-5431)
District Judge:  Honorable Michael M. Baylson

Argued June 26, 2012
_____

Before:  SLOVITER, CHAGARES, and JORDAN, Circuit Judges.

(Filed:  July 6, 2012)

Michael Pileggi, Esquire (Argued)
Suite 905
303 Chestnut Street
Philadelphia, PA 19106
        Counsel for Appellant

Michael A. Bowman, Esquire (Argued)
Charles M. Gibbs, Esquire
Crystal M. Lacey, Esquire

Bowman Kavulich
1600 Market Street
25th Floor
Philadelphia, PA 19103
        Counsel for Appellee Philadelphia Housing Authority

Christopher R. Booth, Jr., Esquire (Argued)
Angela Halim, Esquire
Lisa A. Sabatino, Esquire
Joseph Zaffarese, Esquire
Ahmad & Zaffarese
One South Broad Street
Suite 1810
Philadelphia, PA 19107
        Counsel for Appellees Philadelphia Housing Authority Tenant Support Services
        and Asia Coney

Hollie B. Knox, Esquire (Argued)
Lauren Cates, Esquire
Clifford E. Haines, Esquire
Haines & Associates
1835 Market Street
Suite 2420
Philadelphia, PA 19103
        Counsel for Appellee Carl R. Greene

Sidney R. Steinberg, Esquire (Argued)
Ronald H. Levine, Esquire
Kaitlin M. Piccolo, Esquire
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 14th Floor
Philadelphia, PA 19103
        Counsel for Appellee Diane Rosenthal

_____

OPINION
_____

CHAGARES, Circuit Judge.

Appellant Vincent Morris brought this case pursuant to 42 U.S.C. § 1983 against

the Philadelphia Housing Authority ("PHA"), Tenant Social Services, Inc. ("TSSI"), and

2

several supervisors and colleagues, alleging that they retaliated against him for speech protected under the First Amendment. We will affirm the District Court's grant of the appellees' motions to dismiss.

I.

Because we write solely for the parties' benefit, we set forth only the facts essential to our disposition. From 1999 through 2010, Morris served as Executive Assistant to PHA Executive Director Carl Greene. His duties included "the supervision and oversight of various troubled departments at PHA including . . . TSSI." Appendix ("App.") Vol. II at 9. TSSI is a non-profit organization affiliated with PHA.

In his complaint, Morris alleged that, from 2006 through 2007, Greene required him to participate in various lobbying activities on behalf of PHA. Greene also purportedly ordered Morris to perform work for Equity PAC, a political action committee that was run by TSSI director, and appellee, Asia Coney. Morris resisted those efforts because PHA's acceptance of funds from the United States Department of Housing and Urban Development ("HUD") Moving to Work Demonstration Program precluded it from engaging in political activities of that nature. He also objected to a lawsuit that PHA brought against HUD in 2007 and raised concerns about the governance of TSSI. Greene and Coney allegedly responded to Morris's opposition by either threatening his employment or ignoring his complaints altogether. Finally, Morris claimed that Greene and Diane Rosenthal, PHA's Assistant Executive Director of Finance and Administration, ignored his reports that Coney and another employee were embezzling money from TSSI.

3

In April 2010, Greene demoted Morris, cut his pay by over $30,000, and transferred him. As a result, Morris resigned and brought this action under 42 U.S.C. § 1983 alleging, <u>inter alia</u>, that he was constructively discharged in retaliation for his protected speech. The District Court granted the appellees' motions to dismiss on the basis that Morris's allegedly protected speech was made pursuant to his official duties and, as such, was not protected speech under <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006). The District Court also concluded that appellees were entitled to qualified immunity because Morris had not alleged a plausible claim for a violation of a constitutional right. Morris appeals those rulings.[1]

## II.

The District Court had federal question jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's grant of a motion to dismiss. <u>Santiago v. GMAC Mortg. Grp., Inc.</u>, 417 F.3d 384, 386 (3d Cir. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). "A claim has facial plausibility when the

---

[1] In addition, the District Court declined to exercise supplemental jurisdiction over Morris's Pennsylvania Whistleblower Law claims, held that Morris's First Amendment claims arising from ten of the thirteen alleged incidents of retaliation were time-barred, and concluded that Morris had failed to allege adequately his other claims. Morris does not contest those findings on appeal.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

III.

We recognize that a public employee has the right, "in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti, 547 U.S. at 417. To prevail on a First Amendment retaliation claim, a public employee must demonstrate that (1) he or she engaged in activity that is protected by the First Amendment, and (2) the protected activity was a substantial factor in retaliatory action by the employer. Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009). "The first factor is a question of law; the second factor is a question of fact." Id.

We proceed through three steps to ascertain whether a public employee's speech is protected by the First Amendment. First, as a threshold issue, we must determine whether the employee's speech was made pursuant to his or her official duties, and therefore was unprotected by the First Amendment, or whether it was constitutionally protected speech made as a citizen. Garcetti, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). If the speech was not made pursuant to an employee's official duties, we proceed to the analysis set forth in Pickering v. Board of Education, 391 U.S. 563 (1968), and consider whether "the employee spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418. If the answer to that question is yes, we must determine "whether the relevant government entity had an adequate

5

justification for treating the employee differently from any other member of the general public." Id. In other words, we strive to "'arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. (quoting Pickering, 391 U.S. at 568).

The dispositive question here is whether the District Court correctly held that Morris's speech was made pursuant to his official job duties. While the Supreme Court in Garcetti did not articulate a "comprehensive framework for defining the scope of an employee's duties," it did condemn reliance on "excessively broad job descriptions" and eschewed the use of formal job descriptions to determine whether speech was made pursuant to an employee's official duties. Id. at 424-25. The Court pronounced that speech made pursuant to an employee's official job duties has "no relevant analogue to speech by citizens who are not government employees." Id. at 424.

In light of Garcetti and our subsequent cases, we conclude that Morris's speech was not entitled to First Amendment protection. We have consistently held that complaints up the chain of command about issues related to an employee's workplace duties — for example, possible safety issues or misconduct by other employees — are within an employee's official duties. See, e.g., Foraker v. Chaffinch, 501 F.3d 231, 240 (3d Cir. 2007), abrogated on other grounds by Borough of Duryea v. Guarnieri, 131 S. Ct. 2488 (2011) ("Price and Warren were acting within their job duties when they expressed their concerns up the chain of command . . . ."); Hill v. Borough of Kutztown, 455 F.3d 225, 242 (3d Cir. 2006) (holding that a town borough manager's reports to his

6

superiors about harassment by the town mayor were not protected speech because his reports were made pursuant to his managerial duties).

In Foraker v. Chaffinch, we agreed with the District Court's finding that three Delaware State Police firearms instructors were not entitled to First Amendment protection for their complaints to supervisors about unsafe conditions at the police firing range, because reporting unsafe conditions to their supervisors was part of their official duties as instructors at the range. 501 F.3d at 241, 243. The same can be said of Morris, who acknowledged that his job duties included "the supervision and oversight of various troubled departments at PHA including . . . TSSI." App. Vol. II at 9. Morris's admitted job duties clearly include the oversight of TSSI and rooting out of financial, as well as other, problems at PHA. As in Foraker, Morris complained to his direct supervisors and others in PHA about potential misconduct by employees at PHA and TSSI. Reporting instances of misconduct and advising Greene on the legality of his course of action were responsibilities that logically fell within Morris's duties as Greene's Executive Assistant and as a supervisor at TSSI. Furthermore, Morris's reporting of the embezzlement that he discovered while reviewing TSSI's books can be considered part of his official duties because it related to information acquired through his employment. Gorum, 561 F.3d at 185.[2]

---

[2] Morris's § 1983 claims arising from acts of alleged retaliation that occurred before October 14, 2008 are time-barred. Thus, we need be concerned only with the instances of speech and alleged retaliation occurring after that date, which relate to embezzlement and governance issues at TSSI.

7

Finally, because Morris complained to his superiors within PHA about matters arising in the scope of his employment duties, his speech did not have a "relevant analogue to speech by citizens who are not government employees." Garcetti, 547 U.S. at 424. Morris's speech was distinct from the speech that we have concluded passes over the Garcetti threshold and has an analogue to citizen speech. For instance, in Reilly v. City of Atlantic City, we extended First Amendment protection to truthful in-court testimony arising out of an employee's official job responsibilities because an employee speaks as a citizen in that scenario. 532 F.3d 216, 231 (3d Cir. 2008). Testimony in court is distinguishable from internal reporting because it is part of the official adjudication process. Thus, there is a "relevant analogue to speech by citizens who are not government employees." Garcetti, 547 U.S. at 424. Admittedly, as with testimony, there is a social good that comes from internal reporting of misconduct up the chain of command. The Supreme Court has decided, however, that we should not constitutionalize management disputes between the government and its employees.

For these reasons, we conclude that Morris did not allege instances of constitutionally protected speech and he cannot move forward on his First Amendment retaliation claim. We need not reach the question of qualified immunity.

IV.

In accordance with the foregoing, we will affirm the District Court's dismissal of Morris's amended complaint.

8