# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 17, 2015          Decided July 10, 2015

No. 12-1021

VENETIAN CASINO RESORT, L.L.C.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 12-1076

On Petition for Review and Cross-Application for
Enforcement of an Order of
the National Labor Relations Board

*John J. Manier* and *Matthew T. Wakefield* argued the causes for petitioner. With *John J. Manier* on the briefs were *Frederick H. Kraus* and *Richard S. Rosenberg*.

*Kellie Isbell*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Ruth E. Burdick*, Supervisory Attorney. *Kira D. Vol*, Attorney, entered an appearance.

Before: BROWN, KAVANAUGH, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: During a union demonstration in front of the Venetian Casino Resort, the Venetian requested that police officers at the scene issue criminal citations to the demonstrators and block them from the walkway because they were allegedly trespassing upon private property belonging to the Venetian. The National Labor Relations Board later determined that the Venetian had thereby committed an unfair labor practice in violation of the National Labor Relations Act.

The Venetian argues that the *Noerr-Pennington* doctrine immunizes it from liability under the Act. The *Noerr-Pennington* doctrine originated in the antitrust context but has also been applied in labor cases. Under that doctrine, conduct that constitutes a direct petition to government, but would otherwise violate the Act, is shielded from liability by the First Amendment. We agree with the Venetian that its request to the police was covered by the *Noerr-Pennington* doctrine. We therefore grant the Venetian's petition for review, deny the Board's cross-application to enforce its order, and vacate the Board's order. That said, the *Noerr-Pennington* doctrine has an exception for sham petitions. Because the Board failed to address whether the Venetian's petition was a sham, we remand so that the Board may consider that question in the first instance.

3

I

In 1999, the Venetian, a luxury hotel and casino complex, opened on the famed Las Vegas Strip. A traffic impact study commissioned by the Venetian's developers indicated that the new complex would worsen vehicular traffic on the Strip. Clark County, the Nevada county in which Las Vegas is located, therefore expanded the Strip by one lane. The expansion displaced a public sidewalk that had previously run along the front of the Venetian's property. In exchange, the Venetian agreed to build a replacement sidewalk, running parallel to the Strip, on its property. In February 1999, the Venetian built a temporary walkway in the agreed-upon location.

Also in February 1999, an ongoing battle between the Venetian and two labor unions came to a head. The Nevada Department of Transportation issued the unions a permit to hold a demonstration against the Venetian on the temporary walkway and on one lane of the Strip.

The Venetian strenuously objected to the proposed location of the demonstration. A representative of the Venetian spoke with the Clark County District Attorney. The Venetian took the position that the temporary walkway was its private property and that the unions therefore had no right to demonstrate there. The District Attorney responded that he would not enforce Nevada's trespass law against the demonstrators. The Venetian's representative then met with police department officials. Those officials explained that police officers would attend the demonstration to protect public safety but would not arrest the demonstrators for trespass.

On the day of the demonstration, the Venetian took several additional measures to protect its alleged property rights. The Venetian marked its property boundaries with orange paint and posted signs indicating that the temporary walkway was private property. As over 1,000 demonstrators marched on the walkway, the Venetian played a recorded message over a public address system. The message stated that the demonstrators were subject to arrest for trespass. The Venetian's security guards placed the demonstration's leader under citizen's arrest. And importantly for purposes of this case, the Venetian asked police officers at the demonstration to issue criminal citations to the demonstrators and to block them from the temporary walkway.

Soon thereafter, the Venetian filed suit for injunctive and declaratory relief against the unions and various government entities. *See Venetian Casino Resort, LLC v. Local Joint Executive Board of Las Vegas*, 257 F.3d 937, 939 (9th Cir. 2001), *cert. denied*, 535 U.S. 905 (2002). The Ninth Circuit ultimately held that the temporary walkway was a public forum subject to First Amendment protections and that the Venetian had no right to impede public access to the walkway. *See id.* at 946, 948.

The unions, in turn, filed unfair labor practice complaints against the Venetian with the Board. An administrative law judge found that the demonstration was protected activity under Section 7 of the National Labor Relations Act. *See Venetian Casino Resort, LLC*, 345 N.L.R.B. 1061, 1061 (2005).[1] The ALJ concluded that the Venetian had committed

---

[1] Under Section 7 of the Act, employees have "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C.

unfair labor practices under Section 8(a)(1) of the Act by interfering with the demonstration. *See id.* The Board, in its 2005 Decision and Order, affirmed the ALJ's decision. *See id.*

On appeal, we affirmed the Board's 2005 Decision and Order on all but one issue. *See Venetian Casino Resort, LLC v. NLRB*, 484 F.3d 601, 603 (D.C. Cir. 2007). We agreed that the union demonstration was protected activity under Section 7. *Id.* at 607-08. The Venetian argued, however, that its conduct during the demonstration was an exercise of its First Amendment right to petition the government. *See id.* at 611. We rejected that theory with respect to two aspects of the Venetian's conduct: its broadcast of an anti-trespass message and its attempted citizen's arrest. *See id.* at 614. We therefore affirmed the Board's conclusion that the Venetian had violated Section 8(a)(1) by engaging in those activities. *See id.*

By contrast, we did not decide whether a third aspect of the Venetian's conduct – its request that the police officers at the demonstration issue criminal citations to the demonstrators and block them from the walkway – was a protected petition because the Board had not previously addressed that question. *See id.* at 610, 614. We therefore remanded that question to the Board for consideration in the first instance. *Id.* at 614.

On remand, the Board issued its 2011 Decision and Order. *Venetian Casino Resort, LLC*, 357 N.L.R.B. No. 147

---

§ 157. Section 8(a)(1) of the Act makes it an "unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7. 29 U.S.C. § 158.

(Dec. 21, 2011). The Board surveyed the case law and determined that only "petitions that seek the passage of a law or rule, or a significant policy decision regarding enforcement," are entitled to protection under the *Noerr-Pennington* doctrine. *Id.* at 3. Applying that standard, the Board found that the Venetian's conduct was not a direct petition to government protected by the *Noerr-Pennington* doctrine. *See id.* at 3-4. The Board concluded that the Venetian had committed an unfair labor practice in violation of Section 8(a)(1). *See id.*

The Venetian petitioned this Court for review of the 2011 Decision and Order. The Board cross-applied for enforcement of the 2011 Decision and Order.

## II

We review the Board's resolution of constitutional questions de novo. *See J.J. Cassone Bakery, Inc. v. NLRB*, 554 F.3d 1041, 1044 (D.C. Cir. 2009). Here, we conclude that the Board erred in its *Noerr-Pennington* analysis. The Venetian's request that the police officers at the demonstration issue criminal citations to the demonstrators and block them from the walkway qualifies as a direct petition to government.

## A

The First Amendment's Petition Clause protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I; *see generally Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2498-2500, slip op. at 13-17 (2011) (summarizing scope and history of Petition Clause). When "a person petitions the government" in good faith, "the First Amendment prohibits any sanction on

that action." *Nader v. Democratic National Committee*, 567 F.3d 692, 696 (D.C. Cir. 2009).

The *Noerr-Pennington* doctrine implements that general principle. Under the *Noerr-Pennington* doctrine as it applies in the labor law context, employer conduct that would otherwise be illegal may be "protected by the First Amendment when it is part of a direct petition to government." *Venetian Casino Resort, LLC v. NLRB*, 484 F.3d 601, 611 (D.C. Cir. 2007); *see generally BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002); *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).

What constitutes a direct petition to government? As a starting point, a petition "conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." *Guarnieri*, 131 S. Ct. at 2495, slip op. at 7-8. In modern usage, "to petition" means to "make a request or supplication to," *Oxford English Dictionary* (3rd ed. 2005), and the term has had that meaning since before the Founding. *See Guarnieri*, 131 S. Ct. at 2499, slip op. at 14 ("[T]he Petition of Right of 1628 drew upon centuries of tradition and Magna Carta as a model for the Parliament to issue a plea, or even a demand, that the Crown refrain from certain actions."). The Supreme Court has specified that, for purposes of the *Noerr-Pennington* doctrine, parties exercise their right to petition when they "advocate their causes and points of view respecting resolution of their business and economic interests," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972), or attempt to "influence the passage or enforcement of laws," *Noerr*, 365 U.S. at 135.

Whether conduct constitutes protected petitioning activity "depends not only on its impact, but also on the context and nature of the activity." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 504 (1988).

Applying those principles, we conclude that the act of summoning the police to enforce state trespass law is a direct petition to government subject to protection under the *Noerr-Pennington* doctrine.

Requesting police enforcement of state trespass law is an attempt to persuade the local government to take particular action with respect to a law. As we see it, that fits squarely within the traditional mold of a petition to government protected by the *Noerr-Pennington* doctrine.

As the Supreme Court has stated, the *Noerr-Pennington* doctrine protects petitions directed at "all departments of the Government." *California Motor Transport Co.*, 404 U.S. at 510. And as the Ninth Circuit has persuasively explained, the interests embodied by the Petition Clause are "served by ensuring the free flow of information to the police." *Forro Precision, Inc. v. International Business Machines Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982). It "would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information." *Id.* Those considerations support applying the *Noerr-Pennington* doctrine "to citizen communications with police." *Id.*; *see Ottensmeyer v. Chesapeake & Potomac Telephone Co. of Maryland*, 756 F.2d 986, 993-94 (4th Cir. 1985).

The Board offers a few responses, but none is persuasive.

The Board contends that *Noerr-Pennington* immunity applies primarily to petitions made to public officials in service of high-level political or policy-oriented aims. *See* Board Br. at 21 (doctrine applies to "efforts to influence the passage or enforcement of laws or a significant policy decision"); *see also id.* at 23 ("political activity designed to 'influence public officials'" is typically "immune under *Noerr-Pennington*"); *Venetian Casino Resort, LLC*, 357 N.L.R.B. No. 147, at 3 (Dec. 21, 2011) (*Noerr-Pennington* doctrine protects "petitions that seek the passage of a law or rule, or a significant policy decision regarding enforcement"). By that standard, according to the Board, a property owner's request that police officers on the beat enforce private property rights does not count as a petition to government for purposes of the *Noerr-Pennington* doctrine.

The primary authority cited by the Board is the Supreme Court's decision in *Allied Tube*. That antitrust case involved the standard-setting process of a private organization (the National Fire Protection Association), whose standards were in turn frequently adopted by state and local governments. 486 U.S. at 495. Several members of the organization colluded to manipulate the organization into setting favorable standards that restrained competition. *See id.* at 496-97. The Court held that such collusion did not constitute either a direct petition to government or conduct incidental to a petition. *Id.* at 501-02, 504-07. The Court therefore concluded that the *Noerr-Pennington* doctrine did not immunize the colluding members from antitrust liability. *See id.* at 509-10.

As support for its theory, the Board picks up on the Court's explanation in *Allied Tube* that the alleged petitioning activity was not an "effort[] to persuade an independent decisionmaker." *Id.* at 507. But that statement simply explains why collusion to manipulate a private organization

into excluding competition is classic anti-competitive commercial activity, and not conduct incidental to a petition. *See id.* Nowhere in its opinion does the Supreme Court suggest that everyday attempts to influence government action – say, by summoning the police – are excluded from the *Noerr-Pennington* doctrine's ambit.

The Board also points to *Sure-Tan, Inc. v. NLRB* as evidence that reports of legal violations are not necessarily petitions to government within the scope of the *Noerr-Pennington* doctrine. In *Sure-Tan*, an employer embroiled in a labor dispute reported some of its employees to the Immigration and Naturalization Service in retaliation for their union activity. *See* 467 U.S. 883, 886 (1984). The Board concluded that the employer had committed an unfair labor practice. *See id.* at 888. Reviewing that decision, the Supreme Court held that the employer's request for enforcement of federal immigration laws was not an exercise of its First Amendment petitioning right. *See id.* at 897. The Court reasoned that the employer "did not invoke the INS administrative process in order to seek the redress of any wrongs committed against them. Indeed, private persons" have "no judicially cognizable interest in procuring enforcement of the immigration laws by the INS." *Id.* (citation omitted).

*Sure-Tan* offers no support for – and indeed contradicts – the Board's position. Where employers assert a private property right and ask the police to enforce that right against demonstrators, employers are seeking "redress of . . . wrongs committed against them," to use *Sure-Tan*'s words. *Id.*

In short, the Board erred when it determined that the Venetian's request that the police issue criminal citations to the demonstrators and block them from the walkway did not

qualify as a direct petition to government protected by the *Noerr-Pennington* doctrine.

B

That said, the *Noerr-Pennington* doctrine "does not cover activity that was not genuinely intended to influence government action." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009) (quoting *Allied Tube*, 486 U.S. at 508 n.10) (internal quotation marks omitted). In other words, while "genuine petitioning is immune from" Section 8(a)(1) liability under the *Noerr-Pennington* doctrine, "sham petitioning is not." *BE&K Construction Co.*, 536 U.S. at 526. A petition is a sham if it is "objectively baseless" and is "brought with the specific intent to further wrongful conduct through the use of governmental process." *Nader*, 567 F.3d at 696 (internal quotation marks omitted); *cf. Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757, slip op. at 9-10 (2014).

The Venetian, of course, contends that its request for assistance from the police officers at the scene was a valid attempt to secure its private property rights.

We will not reach that issue at this time. In its 2011 Decision and Order, the Board never addressed whether the Venetian's attempt to summon the police constituted a sham petition. *See Venetian Casino Resort*, 357 N.L.R.B., at 3 n.11. Contrary to the Venetian's claim, the Board did not waive reliance on the sham exception; it never had occasion to reach the sham exception given its conclusion that the *Noerr-Pennington* doctrine did not apply in the first place. We will therefore remand that issue for the Board's consideration in the first instance.

III

The Board's 2005 Decision and Order instructed the Venetian to post a remedial notice "in conspicuous places including all places where notices to employees are customarily posted." *Venetian Casino Resort, LLC*, 345 N.L.R.B. 1061, 1070 (2005). The Board's 2011 Decision and Order also contained a remedial notice requirement, but with modified terms. *Venetian Casino Resort, LLC*, 357 N.L.R.B. No. 147, at 4-5 (Dec. 21, 2011). The 2011 Decision and Order specified that, in "addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means." *Id.*

The Venetian argues that the 2011 Decision and Order's electronic posting requirement was arbitrary and capricious, an abuse of discretion, and in excess of the Board's authority on remand. But we have already determined that we must vacate the Board's 2011 Decision and Order and remand this case to the Board for further proceedings. As a result, we need not decide whether the Board erred by imposing an electronic posting requirement in the 2011 Decision and Order.

\* \* \*

We grant the Venetian's petition for review, deny the Board's cross-application to enforce its order, and vacate the Board's order. Because the Board did not address whether the Venetian's petition was a sham, we remand so that the Board may consider that question in the first instance.

*So ordered.*